**In re ATLANTA EGG & PRODUCE, INC., Debtor.**

**No. CIV.A.2:04–CV–00073–ODE.**

United States District Court,
N.D. Georgia,
Gainesville Division.

Jan. 18, 2005.

Andrew Michael Greene, Troutman Sanders, Merle R. Arnold, III, Troutman Sanders, William Middleton Droze, Troutman Sanders, Atlanta, GA, for Appellants.

Harmon T. Smith, Jr., Office of Harmon T. Smith, Jr., Gainesville, GA, John Wayne Moulton, Moulton & Massey, Conyers, GA, Lawrence H. Meuers, Meuers Law Firm, Naples, FL, for Appellees.

### ORDER

ORINDA D. EVANS, Chief Judge.

Presently before the Court is an appeal from the decision of the United State Bankruptcy Court, filed on March 9, 2004 by Appellants Charles R. Brackett and Tom D. Oliver. The Appellees consist of the Pleasant Valley Group.[1] For reasons

---

1. Appellees, the Pleasant Valley Group includes: Adams Apple Produce, Inc.; Agri-Sales, Inc.; Basin Gold Potatoes Marketing Co–Op; Gold Coast Brokerage Corp.; Gold Digger Apples, Inc.; H.C. Schmeiding Produce Co.; Merrin–Cravens Co.; Potandon Produce, L.L.C.; Progreso Produce Company; Rawls Brokerage, Inc.; South Mill Distribution, Inc.; Southern Valley Fruit & Vegetable, Inc.; and Van Solkema Produce Inc.

stated below, the decision of the Bankruptcy Court is AFFIRMED.

## I. *Procedural Background*

On February 12, 2002, the Pleasant Valley Group commenced a lawsuit against Atlanta Egg & Produce, Inc. ("Atlanta Egg") and its principal officers, Charles R. Brackett ("Brackett") and Tom D. Oliver ("Oliver") in this Court (case number 1:02–CV–325–ODE) seeking enforcement of its members' rights under the trust provisions of the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. § 499e(c) ("PACA").

On February 19, 2002, Atlanta Egg filed a voluntary petition for protection under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 303, in the United States Bankruptcy Court for the Northern District of Georgia (case number 02–30207 REB). On or about July 29, 2003, Brackett and Oliver filed a Motion to Confirm PACA Statutory Trust and to Confirm Payment of PACA Claims ("Brackett and Oliver Motion") [Bankruptcy Docket # 76], wherein Brackett and Oliver objected to the allowance of certain claims as qualified PACA trust claims. That Motion also sought an order declaring those claims invalid as PACA claims and reclassifying those claims as general unsecured claims. Finally, the Motion sought an order directing the Chapter 7 Trustee to pay only the valid PACA trust claims.

On or about July 31, 2003, the Pleasant Valley Group filed a Motion for Turnover of PACA Trust Assets and Incorporated Memorandum of Law ("Pleasant Valley Motion") [Bankruptcy Docket # 78], wherein Pleasant Valley sought a determination that the Pleasant Valley Group, and other PACA trust beneficiaries, had valid PACA trust claims against Atlanta Egg in the aggregate amount of $869,310.68, along with an order directing the Trustee to immediately turn over any PACA trust assets to those beneficiaries with valid PACA trust claims pursuant to § 725 of the Bankruptcy Code.

On or about August 27, 2003, the Chapter 7 Trustee, Betty A. Nappier (the "Trustee") filed a Second Omnibus Objection to the Allowance of Certain Filed Proof of Claims ("Trustee's Motion") [Bankruptcy Docket # 89] seeking an order declaring certain PACA trust claims invalid and reclassifying them as general unsecured claims.

On October 7, 2003, a hearing on the aforementioned Motions was held. Thereafter, on March 4, 2004, the Bankruptcy Court issued an Order [Bankruptcy Docket # 118] (a) denying the Brackett and Oliver Motion; (b) denying Pleasant Valley's Motion for turnover of PACA trust assets; (c) granting Pleasant Valley's Motion for determination of valid PACA trust claims; and (d) denying the Trustee's Motion.

On or about March 9, 2004, Brackett and Oliver filed a Notice of Appeal [Bankruptcy Docket # 122] of the March 4, 2004 Order, thereby initiating the instant case. This appeal is limited to the Bankruptcy Court's denial of the Brackett and Oliver Motion to disallow PACA trust claims, and is brought pursuant to 28 U.S.C. § 158(a).[2]

---

**2.** The section reads as follows:
 (a) The district courts of the United States shall have jurisdiction to hear appeals
 (1) from final judgments, orders, and decrees;
 (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 in-

creasing or reducing the time periods referred to in section 1121 of such title; and
 (3) with leave of the court, from other interlocutory orders and decrees;
of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal

After receiving notice of the bankruptcy appeal, this Court directed the clerk to administratively close the related case pending in this Court (case no. 1:02–CV–325–ODE), but allowing the parties to move to reopen the case after disposition of this bankruptcy appeal.

## II. *Statutory Background*

█ The Court begins with a brief overview of the Perishable Agricultural Commodities Act ("PACA"). In 1930, Congress enacted PACA to promote fair trading practices in the produce industry, *See* 7 U.S.C. § 499a *et seq.*. In particular, Congress intended PACA to protect farmers and growers who were vulnerable to the practices of financially irresponsible buyers. *See Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir.1991). In 1984, Congress amended PACA to create a statutory trust in their favor. 7 U.S.C. § 499e(c); *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1067 (2d Cir.1995) ("Due to the need to sell perishable commodities quickly, sellers of perishable commodities are often placed in the position of being unsecured creditors of companies whose creditworthiness the seller is unable to verify"). The trust protects the sellers against financing arrangements made by merchants, dealers, or brokers who encumber or give lenders a security interest in the commodities or the receivables or proceeds from the sale of commodities, thus giving the claims of these sellers precedence over those of secured debtors. Under the 1984 provision, therefore, a buyer's produce, products derived from that produce, and the proceeds gained therefrom are held in a non-segregated, floating trust for the benefit of unpaid suppliers who have met the applicable statutory requirements.

█ The statute and the federal regulations expressly lay out the steps that a produce seller must take to come within PACA's protection. 7 U.S.C. § 499e(c)(3) and (4); 7 C.F.R. §§ 46.2(aa) and 46.46(e). Under all circumstances, the seller must give the buyer written notice of the seller's intention to preserve its trust benefits:

> (3) The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust. When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. § 499e(c)(3).

Congress further amended PACA in 1995 by allowing sellers to provide this notice on the invoices given to the buyer:

under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

■ In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.".

7 U.S.C. § 499e(c)(4).

■ In other words, under paragraph (4), if the seller and buyer use the default payment terms provided in the regulations ("within 10 days after the day on which the produce is accepted," 7 C.F.R. § 46.2(aa)(5)), this notice of intent to preserve benefits is all that is necessary. On the other hand, if the parties agree to payment terms greater than 10 days after acceptance, but in no event more than 30 days after acceptance, this agreement must be in writing. The seller must also disclose these non-statutory payment terms, "on invoices, accountings, and other documents relating to the transaction." 7 U.S.C. § 499e(c)(3).

■ Thirty days is the maximum allowable payment term under PACA regulation 7 C.F.R. § 46.46(e)(2), which provides

as follows: "The maximum time for payment for a shipment to which a seller, supplier, or agent can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance of the commodities ...." This limitation exists because the statute is intended to protect only those produce sellers making short-term credit arrangements. H.R. Rep No. 98–543 at 7 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 410 ("The committee does not intend the trust to apply to any credit transaction that extends beyond a reasonable period").

III. *Jurisdiction and Standard of Review*

■ This Court has jurisdiction to review orders of bankruptcy judges under 28 U.S.C. § 158. In reviewing a bankruptcy court order as an appellate court, the district court reviews the bankruptcy court's legal conclusions de novo. *In re JLJ Inc.,* 988 F.2d 1112, 1116 (11th Cir.1993), citing *In re Goerg,* 930 F.2d 1563, 1566 (11th Cir.1991). The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witness. *Id.*

IV. *Issue on Appeal*

In denying the Brackett and Oliver Motion, U.S. Bankruptcy Judge Robert E. Brizendine found that the following creditors complied with both the notice requirements and payment term provisions of 7 U.S.C. §§ 499e(c) and concluded that the following claims are valid PACA trust claims in the following amounts:

| Claim No. | Creditor | Invoice payment terms | Allowed Amounts |
| --- | --- | --- | --- |
| 1 | Rawls Brokerage | None | $ 1,954.80 |
| 3 | Weis Buy Service | None | $95,598.80 |

| | | | |
|---|---|---|---|
| 4 | John Manning Co., Inc. | 30 days | $ 5,359.90 |
| 16, 17 | Prime Commodities | P.A.C.A. 21 or PACA TERMS | $27,901.16 |
| 24 | Farm Fresh Direct | PACA TERMS | $25,454.63 |
| 35 | Summerlin Farms | 30 days | $ 472.50 |
| 37 | Sun Valley Trading | Net 14 days | $ 1,841.50 |
| 43 | Osage Farms | None | $ 900.00 |
| 53 | Double D Produce Co. | Net 21 | $18,557.00 |
| 55 | Ham Produce Company, Inc. | None | $ 3,425.00 |
| 57 | Chipper Glenn Farms, Inc. | 30 days | $ 7,915.50 |
| 58 | Fashion Fruit Company d/b/a Baci Fresh | 21 days | $14,732.30 |
| 60 | Northern Fruit Company, Inc. | None | $ 6,688.50 |
| 61 | Brooks Tropical | 21 days | $ 3,971.00 |
| 64 | Adam's Apple Produce, Inc. | Net 30 | $92,024.30 |
| 65 | Agri–Sales, Inc. | Net 21 days | $ 5,413.00 |
| 67 | Basin Gold Cooperative, Inc. | NET 30 DAYS | $ 4,104.00 |
| 75 | Gold Digger Apples, Inc. | NET DUE 30 DAYS | $ 7,604.80 |
| 76 | Gold Coast Brokerage Corp. | None | $15,236.00 |
| 77 | H.C. Schmieding Produce, Co. | None | $ 3,075.00 |
| 82 | Potandon Produce, LLC d.b.a. Green Giant | NET 21 DAYS | $ 900.00 |
| 83 | Progresso Produce Co. | None | $ 2,275.00 |
| 85 | South Mill Distribution, Inc. | NET 30–DUE IN 30 DAYS | $ 7,277.50 |
| 86 | Southern Valley Fruit & Vegetables, Inc. | 30 days | $ 6,261.15 |
| 88 | Van Solkema Produce, Inc. | NET 21 DAYS | $ 1,631.25 |
| 92, 79 | Merrin–Cravens Co. | net 21 | $4,1881.30 |
| 93 | Homestead Pole | NET 21 | $ 6,302.98 |

Each invoice contained the statutory notice of intent in 7 U.S.C. § 499e(c)(4).

The issue on appeal is whether the Bankruptcy Court erred as a matter of law in finding that the above creditors of Atlanta Egg preserved their benefits in the PACA trust, thereby perfecting valid PACA trust claims, when the creditors gave notice of intent to preserve their trust benefits by means of their invoices pursuant to 7 U.S.C. § 499e(c)(4), but listed payment terms other than the regulatory 10 days on their invoices without a written agreement between the parties.

### V. *Discussion*

Appellants argue that any payment terms other than ten days must be agreed to in writing by the parties prior to the transaction and maintained in their files in order to qualify as proper PACA notice under the statute. If payment terms oth-

er than 10 days are not agreed to in writing by the parties, and are nonetheless incorporated into an invoice, such invoice cannot preserve the PACA trust pursuant to 7 U.S.C. § 499e(c)(4). Therefore, according to Appellants, because Appellees and Atlanta Egg never entered into a written pre-transaction payment agreement and the terms of payment appearing on the invoices at issue either (a) contain payment terms other than 10–days, (b) do not list a payment term at all, or (c) list a payment term of "PACA," the notice of intent to preserve PACA rights is incomplete and ineffective.

There are no Eleventh Circuit cases dealing with the preservation of trust benefits under PACA. In support of their argument, Appellants rely on *Bowlin & Son, Inc. v. San Joaquin Food Service, Inc.,* 958 F.2d 938 (9th Cir.1992) and *Overton Distributors, Inc. v. Heritage Bank,* 340 F.3d 361 (6th Cir.2003).

In *Bowlin,* the parties had a written agreement that extended the payment terms beyond the standard 10–day regulatory provision, but the seller failed to include these terms on its invoices. The Ninth Circuit found that language of the statute to be "unambiguous." *Bowlin,* 958 F.2d at 940. According to the Ninth Circuit, "Where 'the parties expressly agree to a payment time period different from that established by the Secretary,' the statute mandates that 'the terms of payment *shall* be disclosed on invoices, accountings, and other documents relating to the transaction.'" *Id.* (quoting 7 U.S.C. § 499e(c)(3), emphasis added). Therefore, "failure to include payment terms in invoices divests the seller of trust benefits." *Id.*

In *Overton,* the parties had a written agreement setting payment terms of ten days within a 15–day accrual. The payment terms on invoices from 1998 forward,

however, were "10 days EOM," establishing that the payment was due within 10 days after the end of each calendar month in which produce was delivered. The Sixth Circuit noted that the parties had clearly agreed in 1994 to terms different from the standard 10–day payment provision contained in the PACA regulations. *Overton,* 340 F.3d at 366. Consequently, "PACA and the regulations mandate that those terms had to be disclosed on the invoices." *Id.* Moreover, because payments for produce delivered on the first of the month could be made as late as 40 days after the date of acceptance, the invoices indicated that Overton was agreeable to a payment schedule outside of PACA's protection. The Sixth Circuit, therefore, held that Overton was not entitled to assert priority over accounts receivable that arose from the sale of its produce.

The two cases relied on by Appellants deal with written agreements that extended the payment terms beyond the standard 10–day statutory provision. Indeed, the statute "imposes strict disclosure obligations relating to written agreements that extend the payment terms." *Overton,* 340 F.3d at 367. There is no such dispute, however, in this case, Appellees and Atlanta Egg never entered into a written pre-transaction payment agreement. Appellant's Br. at 8, n. 4; Appellees' Br. at 10. In fact, the basis for the appeal is that the invoices objected to by Appellants contained terms other than the default 10 days without a written agreement between the parties. As a result, these cases provide little guidance for the issue presented here.

The role of the courts in interpreting a statute is to give effect to Congress's intent. *See Negonsott v. Samuels,* 507 U.S. 99, 104, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993). Because it is pre-

sumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with the plain language of the statute itself. *Mansell v. Mansell*, 490 U.S. 581, 588, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Where the statutory language is plain and unambiguous, further inquiry is not required, except in the extraordinary case where a literal reading of the language produces an absurd result. Moreover, a court may depart from the plain language of a statute only by an extraordinary showing of a contrary congressional intent in the legislative history. *See Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984).

▬ In addition to following the general canons of statutory construction, this Court is mindful that PACA, which was enacted to protect unpaid suppliers of produce and alleviate the burden of nonpayment on commerce is a remedial legislation which a court should construe to effectuate its purpose. *See Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

▬ The plain and unambiguous language of 7 U.S.C. § 499e(c)(4) provides that the notice requirement for preserving PACA benefits in trust is met by including on the bill or invoice the information required by the last sentence of paragraph (3); and the following statement:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 7 U.S.C. 499e(c). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4). There is no dispute that each invoice at issue contained the statutory statement quoted above.

The last sentence of paragraph (3) states, "When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction." Appellants do not allege that the parties expressly agreed to payment terms different from that established by the Secretary. Neither do Appellees indicate the existence of any such agreement. Absent an express agreement between the parties to payment terms other than the default 10 days, the last sentence of paragraph (3) is inapplicable, and under the plain meaning of 7 U.S.C. § 499e(c)(4) the PACA benefits are properly preserved simply by including the statutory notice on the invoice. This Court has reviewed the individual invoices at issue and notes that each invoice contains on its face the statutory notice of intent.

With respect to those invoices that included no payment terms at all, this Court has no difficulty in deciding that the sellers properly preserved the benefits of the trust. The last sentence of section 499e(c)(3) only requires disclosure of payment terms on the invoices "[w]hen the parties expressly agree to a payment time period different from that established by the Secretary." It is undisputed that the parties made no agreement to a payment time different from the standard ten days. Pursuant to PACA regulations, therefore, payment was due within 10 days of receipt of the goods, so this omission from the invoice was not fatal. *See Frio Ice. S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 154 n. 1 (11th Cir.1990). Appellant has pointed to no

authority requiring the seller to expressly include a payment term of ten days on the invoice in order to preserve the trust. Therefore, the statutory notice of intent printed on each invoice was sufficient to preserve the PACA trust benefits.

 With respect to the remaining invoices, i.e., those that included payment terms other than 10 days, this Court also concludes that those sellers properly preserved the benefits of the trust. While the Court agrees with Appellants that PACA requires any agreement to extend payments terms to be in writing, *see,* e.g., 7 U.S.C. § 499e(c)(3)(ii), in this case, it is undisputed that there was no such agreement. Because there was no agreement—oral or written—to extend the payment terms beyond the standard 10 days, the listing of payment terms other than 10 days had no legal relevance. No provision of the statute or regulations disqualifies a seller from PACA trust benefits simply because the seller unilaterally changed the payment term on the invoice to a period other than the standard 10–day period, but in no circumstance greater than 30 days. These sellers satisfied the notice requirement by including the requisite language on the face of their invoices to Atlanta Egg, *see* 7 U.S.C. § 499e(c)(4), and the payment period on the invoices did not exceed thirty days.[3] In compliance with 7 U.S.C. § 499e(c)(4), these sellers, therefore, properly preserved their PACA trust benefits.

The Court's interpretation of the PACA statute and regulations is further supported by the Third Circuit's decision in *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197 (1998). Idahoan Fresh ("Idahoan"), the seller, and Advantage Produce, Inc. ("Advantage"), the buyer, failed to enter into a written agreement extending the payment term.[4] Twenty-eight of the thirty outstanding invoices issued by Idahoan to Advantage, however, stated "Payment Terms: Net 20 days." The remaining two invoices contained no payment term.

The issue presented in *Idahoan* was whether a seller forfeited its right to participate in the PACA trust if it failed to reduce to writing an agreement to extend the payment term. According to the Third Circuit, "[t]he plain and unambiguous language of the section does not provide ... that a written agreement is a precondition of being entitled to the statutory trust benefits. Rather, the requirement is relevant to assessing when prompt payment is due and therefore when notice is timely." *Idahoan,* 157 F.3d at 203. The writing requirement, therefore, "relates to the enforceability of an agreement to extend a payment term, but does not disqualify an unpaid seller from receiving trust benefits." *Idahoan,* 157 F.3d at 204. Finding that Idahoan (1) satisfied the notice requirement by including the requisite language on the face of their invoices to Advantage and (2) did not agree to a payment period over 30 days, the Third Circuit concluded that their failure to reduce to writing an agreement to extend the payment term did not disqualify them, from their share in a pro-rata distribution of the statutory trust. *See also Hull Co. v. Hauser's Foods, Inc.,* 924 F.2d 777 (8th Cir.1991) (holding that oral agreements between produce sellers and buyers as to payment terms beyond the standard ten

---

**3.** The Court's decision does not reach the situation where the invoice provided for a payment period in excess of 30 days because that situation is not before the Court in this case.

**4.** Advantage only alleged the existence of an oral agreement extending the payment term. *Idahoan,* 157 F.3d at 200.

days after delivery had no effect on the seller's right to trust protection under PACA).

In *Idahoan*, as in this case, the seller's invoices included payment terms other than ten days without a written agreement extending those terms between the parties prior to the transaction. Like the Third Circuit in *Idahoan*, this Court finds that in such instances, the seller does not lose its right to PACA benefits. This Court, however, need not go so far as to adopt the holding in *Idahoan*, which permitted sellers to orally extend payment terms without adverse effect on PACA trust eligibility, for in this case neither party alleges the existence of any agreement to extend payment terms beyond the standard ten days. This Court only holds that sellers of produce do not lose their PACA trust benefits when they give notice of intent to preserve their trust benefits by means of their invoices pursuant to 7 U.S.C. § 499e(c)(4), but list no payment terms or list payment terms other than the regulatory ten days on their invoices without an agreement between the parties.

VI. *Conclusion*

For the foregoing reasons, the March 4, 2004 Order of Bankruptcy Judge Brezendine [Bankruptcy Docket # 118] is AFFIRMED.