FAY, Circuit Judge:
 

 The issue in this adversary proceeding is ownership of the debtor’s promissory notes, secured by a mortgage on a tract of land located along U.S. Highway 431 near Guntersville, Alabama. The debtor, JLJ, Inc., purchased the subject property in 1986 from appellee Karen Rush and gave her the promissory notes as partial payment. Karen Rush claims present ownership of the notes. In 1987, Karen Rush’s husband and attorney-in-fact assigned the notes and mortgage to appellant Rush Building Company, Inc. (hereinafter RBC). RBC claims to own the notes as Karen Rush’s assignee. Ownership of the promissory notes depends on the validity of the assignment executed by Karen Rush’s attorney-in-fact. In turn, the validity of the assignment depends on a factual issue unresolved by the bankruptcy judge, whether Karen Rush orally revoked the power of attorney before her attorney-in-fact executed the assignment. Because the bankruptcy judge did not make this crucial factual finding, the case must be remanded to the bankruptcy court.
 

 FACTS
 

 Understanding the disposition of this case in the bankruptcy and district courts requires understanding the intricate legal and business schemes conducted by the Rush family of Marshall County, Alabama. The Rush family includes husband and wife Chris and Nell Rush, their son, Charles Edward Rush (hereinafter Edward), and Edward’s wife, Karen Rush. The Rushes long have been involved in various contracting and land development activities.
 

 The specific issue in this adversary proceeding, ownership of the debtor’s promissory notes, springs from a broad power of attorney which Karen executed and delivered to Edward in 1981. The power of attorney was of unlimited duration and included the authority to sign Karen’s name by facsimile, using a rubber stamp of her signature. Moreover, the power of attorney included a provision allowing Edward, acting as attorney-in-fact, to subordinate Karen’s interests to his own: “[i]f at any time there should become a conflict between our two interests concerning financial or legal matters then his interest will come first and mine second.” The power of attorney also specified that Karen could.
 
 *1114
 
 cancel the agency “by sending a certified letter to Charles Edward Rush or by advertising [the cancellation] in a local newspaper for four (4) consecutive weeks.” During the early 1980's, this power of attorney enabled Edward to escape his creditors by not maintaining any bank account or acquiring any property in his own name. He received payments and title to property in Karen’s name and conducted his financial affairs through her bank account, regularly using the rubber stamp of Karen’s signature to draw checks on the account.
 

 Similarly, the business activities of the Rush family and their family-owned corporation, RBC, were falsified and tailored “to the best interests of one or more members of the [family] unit or the [family] itself, with Karen Rush participating in the related schemes as called upon by Edward Rush....” (Bnk.Ct. R4-145-6). For example, to facilitate various business schemes, Nell Rush falsely notarized conveyances of land and other documents. Chris and Edward Rush executed sworn statements, certificates, and other documents without regard to their truthfulness. To enable Edward to secure needed loans, Karen Rush represented to prospective lenders that she owned 64% of RBC stock, which may have actually belonged to Nell Rush.
 

 Into this context of the Rush family’s business strategy falls the ownership history of the subject property, which the debt- or purchased with the disputed promissory notes. Edward and Karen Rush bought the subject property in 1974. Shortly after that time, Edward’s failed construction and strip mining ventures plunged them deeply into debt to Chris Rush, RBC, and other creditors. To satisfy their debts to Chris Rush and RBC, Edward and Karen conveyed the subject property to Chris and Nell Rush in 1976. Chris and Nell soon conveyed the property to RBC, which conveyed the property back to Karen in 1986. Karen claims that the consideration for this 1986 conveyance was her 64% ownership interest in RBC. In contrast, Chris Rush, who as corporate president signed the deed to Karen, claims that Karen never actually owned the stock. Chris Rush claims that the property was conveyed to dampen Karen’s threats to tell Nell about Chris’ longstanding extramarital affair. The bankruptcy judge, however, found that “the true motivation for the conveyance ... more likely was to further some deception deemed advantageous to the business interests of Edward or Chris Rush or [RBC] or all of them.” (Bnk.Ct. R4-145-6). In any event, soon after Karen received the subject property, she sold it to the debtor for $1,100,000. The debtor paid Karen $50,000 at the time of purchase, gave her promissory notes for the remainder of the purchase price, and secured those notes with a mortgage on the property.
 

 At this point, we turn to the circumstances surrounding the disputed assignment of the notes and mortgage to RBC. On March 18, 1987, approximately one week before the assignment to RBC, Karen Rush fled her home after Edward threatened her with violence. Karen and her son testified that on March 18th Karen told Nell Rush to get the rubber signature stamp from Edward and destroy it. In contrast, Nell Rush and other witnesses testified that Karen told “Nell Rush that Edward had her power of attorney, that Nell was a notary public, and that they could do whatever they wanted to do with the property, as all she wanted to do was leave.” (Bnk.Ct. R4-145-7). The bankruptcy judge did not make a factual finding regarding whether Karen expressed an intent to revoke the power of attorney on the night she left. Instead, the judge found the evidence to be inconclusive.
 

 The judge did find, however, that Edward used the power of attorney on or about March 24, 1987 to assign the notes and mortgage from Karen Rush to RBC. Edward stamped Karen’s signature on the assignment without reference to its being executed by an agent and back-dated the assignment to December 31, 1986. Nell Rush, 94% owner and corporate secretary of RBC, purported to take the acknowl-edgement of Karen’s signature. Similarly, Edward transferred other real estate owned by Karen to Shamrock Farm & Land Corp., partially owned by Nell Rush,
 
 *1115
 
 by stamping Karen’s signature on the deeds. On or about April 1, 1987, Karen refused Edward’s request to sign a document assigning the mortgage on the subject property to RBC.
 

 Karen and Edward Rush never reconciled after their estrangement. On May 28, 1987, Karen Rush’s divorce lawyer recorded a general power of attorney from Karen, which revoked all powers of attorney that Karen had granted prior to April 10, 1987. Nevertheless, in July, 1988, Edward again attempted to use Karen’s power of attorney to transfer the notes and mortgage to RBC. While in jail for assaulting Karen, Edward stamped Karen’s signature on another purported assignment of the notes and mortgage. This assignment recited that it was executed in Karen’s name by Edward as her attorney-in-fact.
 

 In 1988, the debtor, JU, Inc., entered Chapter 11 bankruptcy after paying RBC $57,000 on the promissory notes. Both Karen Rush and RBC filed proofs of claim for the remaining amount due on the notes. The debtor initiated this adversary proceeding to determine which party is entitled to payment on the notes. In the bankruptcy court, Karen Rush attacked .the first assignment on the ground that the execution was improper because it was a stamp of her signature rather than a written signature, and because it did not disclose the fact that it was executed by an agent. She attacked both assignments on the grounds that they were void because they were against her interest and that she had revoked the power of attorney before the assignments were executed.
 

 The bankruptcy judge found that the second assignment was clearly void because it was executed after the power of attorney to Karen’s divorce lawyer revoked the earlier one given to Edward. The judge found the first assignment valid, however, and awarded the notes and mortgage to RBC. The judge reasoned that the execution of the first assignment was proper because Alabama Code § 7-3-202(2) allows an agent to indorse instruments for the principal, and Alabama Code § 7-3-401(2) allows a signature to be stamped on an instrument, instead of actually being written by hand. If an agent could have negotiated the notes by stamping Karen’s signature on them, the judge reasoned, then that form of execution also should be valid to assign the notes. In addition, the bankruptcy judge determined that the first assignment was not void for being against Karen’s interest. The judge noted that the parties had contemplated and condoned the exercise of the power of attorney for Edward’s benefit and to Karen’s detriment, directing that “[Edward’s] interest will come first and [Karen’s] second.” Because Karen expressly had allowed Edward to use the power of attorney to her detriment, the bankruptcy judge declined to void the first assignment on that ground.
 

 Finally, the judge declined to consider whether Karen’s and Edward’s estrangement impliedly revoked the power of attorney before Edward assigned the promissory notes to RBC. The judge found that all of the Rushes, including Karen, had unclean hands. He therefore declined to grant Karen equitable relief from the assignments on the ground of implied revocation. Because the bankruptcy judge did not make a finding as to whether Karen orally revoked the power of attorney the night she left Edward, he concluded that the first assignment was valid. He therefore declared RBC the owner of the debt- or’s promissory notes.
 

 On appeal, the district court reversed the judgment of the bankruptcy court and remanded the case with instructions to enter judgment in favor of Karen Rush on the issue of ownership of the debtor’s promissory notes. The district court' accepted the bankruptcy court’s factual findings and resolved only to apply the law independently to those findings. The district judge determined that the bankruptcy court’s factual findings “strongly suggested]” that Karen granted Edward the power of attorney in the context of a trusting family relationship. Further, he found that this trust evaporated when Karen fled Edward’s threats of violence. Therefore, the district court held, the estrangement impliedly revoked the power of attorney and, accord
 
 *1116
 
 ingly, Edward’s assignment of the notes to RBC was void.
 

 The district judge also ruled that the bankruptcy judge erred in refusing to grant Karen equitable relief from the assignments on the basis of implied revocation. The district judge determined that the bankruptcy judge’s factual findings suggested that Karen’s hands were less dirty than Edward’s. Therefore, the district judge reasoned, because Karen was not in
 
 pari delicto
 
 with Edward, the clean hands doctrine did not bar equitable relief to Karen at the expense of Edward’s corporation, RBC.
 

 DISCUSSION
 

 The crucial issue in determining ownership of the debtor’s promissory notes is whether Karen had revoked the power of attorney before Edward executed the first assignment to RBC.
 
 [1]
 
 If Karen orally revoked the power of attorney when she fled Edward’s threats of violence, then the assignment Edward executed one week later would be void. If Karen did not revoke the power of attorney, then the assignment may be valid. The bankruptcy court did not resolve this factual issue. Therefore, the case must be remanded to the bankruptcy court for appropriate findings of fact.
 

 In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court’s legal conclusions
 
 de novo, In re Goerg,
 
 930 F.2d 1563, 1566 (11th Cir.1991), but must accept the bankruptcy court’s factual findings unless they are clearly erroneous. 11 U.S.C.App., Bankruptcy Rule 8013 (1988). In turn, this court independently examines the bankruptcy court’s factual findings for clear error and reviews
 
 de novo
 
 the legal determinations of both the bankruptcy and district courts.
 
 In re Club Associates,
 
 956 F.2d 1065, 1069 (11th Cir. 1992). Neither the district court nor this court may make independent factual findings. If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings.
 
 In re Cornelison,
 
 901 F.2d 1073, 1075 (11th Cir.1990);
 
 In re Sublett,
 
 895 F.2d 1381, 1384 (11th Cir. 1990).
 

 In this case, the question of oral revocation is outcome determinative because the assignment of the promissory notes to RBC is otherwise valid. The bankruptcy judge correctly found that the assignment was not void for being against Karen Rush’s interest. Although the general rule is that an agent’s act against the interest of the principal is void, specific instructions from a fully informed principal would override that general rule.
 
 See Naviera Despina, Inc. v. Cooper Shipping Co.,
 
 676 F.Supp. 1134, 1141 (S.D.Ala.1987) (An agent must not enter into a transaction concerning the subject matter of the agency in which the agent has an interest adverse to that of the principal, “except where the principal has full knowledge and gives consent.”). In this case, Karen Rush knew of and participated in Edward’s schemes involving transfers of property. The power of attorney that Karen granted to Edward expressly authorized its use to Karen’s detriment. As a result, we agree with the bankruptcy judge that the assignment of the promissory notes to RBC pursuant to the power of attorney was not void for being against Karen Rush’s interest.
 
 [2]
 

 However, even though the assignment was not void for being against Karen Rush’s interest, it still would be void if Karen orally revoked the power of attorney before Edward executed the assignment. Although the power of attorney specified two possible methods of revocation, those were not the only ways Karen could revoke the agency. For example, a principal may revoke a power of attorney orally.
 
 Cooper
 
 
 *1117
 

 v. Cooper,
 
 206 Ala. 519, 91 So. 82, 84 (1921). The sufficiency, or effectiveness, of the revocation depends on the facts of the case.
 
 Id.
 
 In determining the effectiveness of the revocation, courts should consider whether the principal gave notice of the revocation to the agent and parties likely to deal with the agent on the strength of the power of attorney.
 
 Id.
 

 Because an oral revocation could have been effective in this case, the crucial question is whether Karen told Nell Rush to destroy the rubber signature stamp or to “do whatever [she and Edward] wanted to do with the property.” Unfortunately, the bankruptcy court did not make this necessary factual finding. Therefore, the district court should have remanded the case to the bankruptcy court for the appropriate factual findings. The district court exceeded the proper scope of review when it independently found that Karen’s and Edward’s estrangement impliedly revoked the power of attorney. The district judge inferred this revocation from the circumstances surrounding the Rushes’ estrangement. This is the kind of factual inference which lies solely within the province of the bankruptcy court as the trier of fact.
 
 [3]
 
 Therefore, this case must be remanded to the bankruptcy court for factual findings regarding whether Karen Rush orally, revoked the power of attorney before Edward Rush assigned the debtor’s promissory notes to RBC on her behalf.
 

 CONCLUSION
 

 For the foregoing reasons, we VACATE the judgment of the district court and REMAND this case for further proceedings in the bankruptcy court.
 

 [1]
 

 . Appellant RBC does not argue on appeal that the second assignment, executed July 1988, was effective. Therefore, we do not address that issue.'
 

 [2]
 

 .
 
 On appeal, Karen Rush does not argue that improper execution of the first assignment rendered it ineffective; therefore, we will not address that issue.
 

 [3]
 

 . In addition, the district court s reversal of the bankruptcy court's refusal to grant Karen Rush equitable relief is suspect. It appears that the district court reviewed
 
 de novo
 
 the bankruptcy court’s exercise of equitable discretion. However, a trial courts refusal to use its equitable powers is reviewed only for an abuse of discretion.
 
 Federal Deposit Ins. Corp. v. Morley,
 
 915 F.2d 1517, 1523 (11th Cir.1990).