**Denise ROBERTS–DUDE, a/k/a Denise Roberts, a/k/a Denise Rutnik, Appellant,**

v.

**JP MORGAN CHASE BANK, N.A., Appellee.**

No. 13–CV–80240–ROSENBAUM.

Bankruptcy No. 11–26900–BKC–EPK.

United States District Court, S.D. Florida.

Sept. 25, 2013.

Marshall Joel Osofsky, Law Office of Paul A. Krasker, West Palm Beach, FL, for Appellant.

Jeffrey T. Kuntz, Michael D. Lessne, Grayrobinson PA, Fort Lauderdale, FL, for Appellee.

### ORDER AFFIRMING BANKRUPTCY COURT ORDER

ROBIN S. ROSENBAUM, District Judge.

This matter is before the Court on Appellant Denise Roberts–Dude's appeal of

the Order Denying Motion to Value and Bifurcate as to Property Located at 1450 Enclave Circle, Royal Palm Beach, Florida, entered by the Honorable Erik P. Kimball, United States Bankruptcy Judge. *See* D.E. 2–3 at 133–34. The Court has carefully reviewed the briefs in this matter, as well as the entire record on appeal, and now affirms the Bankruptcy Court's Order for the reasons set forth below.

## I. *Background*

Appellee JP Morgan Chase Bank, N.A. ("Chase"), holds a third mortgage lien in the approximately amount of $519,000.00 on property located at 1450 Enclave Circle, Royal Palm Beach, Florida, (the "Property"), the residence of Appellant Denise Roberts–Dude. The Property is also encumbered by a first mortgage in favor of Wells Fargo Bank, N.A., in the amount of $769,264.66 and a second mortgage in favor of Wells Fargo Bank, N.A., in the amount of $142,186.28.

During Chapter 11 bankruptcy proceedings, Appellant and Debtor Roberts–Dude filed her Motion to Value Pursuant to 11 U.S.C. § 506(a) and to Bifurcate Pursuant to 11 U.S.C. § 506(d) ("Motion to Bifurcate"). In her Motion to Bifurcate, Roberts–Dude submitted evidence that the value of the Property at that time was $860,000.00. In view of the fact that more than that amount remained due and owing to Wells Fargo on the first two mortgages alone, Roberts–Dude invoked 11 U.S.C. §§ 506(a) and (d) and sought to bifurcate the creditors' claims and strip off the entire unsecured lien of Chase, so it could be treated as a general unsecured claim.

The Property in this case is the subject of a number of purported deeds. On August 20, 2004, the Property was deeded from other parties to Roberts–Dude's husband, Harald Dude, as a single man. *See* D.E. 2–3 at 105.[1] Two months later, on October 23, 2004, Dude quitclaimed the Property to himself and Roberts–Dude as his "wife as tenants by the entireties with right of survivorship." *Id.* at 103.

On September 6, 2006, Dude recorded a "Corrective Quit–Claim Deed" listing the owners as himself and his "wife as tenancy by the entireties with right of survivorship." *Id.* at 104. A new deed was again recorded on February 5, 2007. *See id.* at 100. The February 5, 2007, deed was between "HARALD DUDE AND DENISE ROBERTS DUDE, his wife as tenants by the entireties with right of survivorship," as "Grantor," and Roberts–Dude as "Grantee." *Id.* It provides that "the [G]rantor . . . has granted, bargained and quitclaimed to the . . . Grantee and Grantee's heirs and assigns forever 96% of [the Property]. . . ." *Id.*

Finally, on April 22, 2011, the last purported deed was recorded. This deed was between "HARALD DUDE and DENISE DUDE, husband and wife," as "Grantors," and "DENISE ROBERTS DUDE, a married woman, AS TO AN UNDIVIDED NINETY–EIGHT PERCENT (98%) INTEREST, and HARALD DUDE and DENISE DUDE, husband and wife, AS TO AN UNDIVIDED TWO PERCENT (2%) INTEREST . . .," as "Grantees." *Id.* at 101. In this deed, "Grantors . . . granted, bargained and quitclaimed to . . . Grantees and Grantees' heirs and assigns forever" the Property. *Id.* A handwritten legend across the top of this deed states, "Re-recording to include notary and acknowledgment—original OR. BK. 21387,

---

1. Some filings in the appellate record bear more than one page-numbering system: the original page number or numbers and the page number imprinted across the tops of each page by the Court's CM/ECF filing system. This Order refers to the page numbers left by the Court's CM/ECF filing system.

PG 1461." *Id.* This is the book and page number for the February 2007 deed discussed above.

In support of her Motion to Bifurcate, Roberts–Dude submitted her own Affidavit and the Affidavit of her husband. In her own Affidavit, Roberts–Dude averred that as of April 22, 2011, she has held "an undivided 98% interest in the [Property] with the balance of 2% being held as an 'undivided interest' with [Dude] but not as tenants by the entireties." *Id.* at 98. Roberts–Dude further attested that the Property "is intentionally not held as [tenants by the entirety] as is evidenced in the public records as well as not having the unities of possession, interest, title, time or survivorship." *Id.* at 99.

Similarly, Dude states in his Affidavit that in executing the February 5, 2007 deed, he "specifically and intentionally omitted ownership by tenancy by the entireties or rights of survivorship." *Id.* at 104. He further asserts that in executing the April 22, 2011, deed, he "specifically and intentionally omitted ownership by tenancy by the entireties or rights of survivorship" and that the Property "is not held as tenancy by the entireties and does not enjoy the unities of possession, interest, title, time or survivorship." *Id.*

After reviewing the deed history for the Property and the Affidavits, the Bankruptcy Court reached the following conclusions:

> The debtor argues that the two percent interest granted to the debtor and her husband in this last deed, let's assume it's void, is not tenancy by the entirety, meaning that they are now holding as joint tenants.

> But Florida law provides that any grant of real property to a married couple is presumed tenants by the entirety unless the instrument itself indicates otherwise. This instrument does not indicate otherwise.

> The affidavits of the debtor and her husband do not change the effect of the deed under Florida law. It doesn't matter what they say after the fact. We look at the instruments themselves in the real estate record to see what parties hold and what the nature of their estate is.

> It also does not matter that prior deeds specifically said it was tenants by the entirety in order again, for this not to be an interest in tenants by entirety in two percent of the overall fee estate in the property they would have to negate that provision.

> So as of the petition date on June 17th, 2011, Mr. Dude still held, with the debtor, an undivided interest in two percent of the subject property as tenants by the entirety. It doesn't matter how small this is. That two percent interest is sufficient to trigger the case law that I cited earlier. It is not possible for this Court to strip off the JP Morgan Chase lien, and so the motion will be denied.

*Id.* at 26–27.[2] Because the Bankruptcy Court determined that a portion of the Property was still held by tenancy by the entirety, and further, because Roberts–Dude's husband was not before the Bankruptcy Court since he is not a debtor in this case, the Bankruptcy Court held that it could not strip off the Chase lien. Roberts–Dude appeals the Bankruptcy Court's conclusion that a portion of the Property is

---

2. For purposes of his discussion, the Bankruptcy Court assumed without deciding that all of the alleged deed transactions were valid. *See* D.E. 3 at 23. Chase argues that, in fact, the last two alleged deeds were not valid.

The Court does not address these arguments here because the Court agrees with the Bankruptcy Court's analysis that even if the deeds were valid, the Bankruptcy Court properly denied Roberts–Dude's Motion to Bifurcate.

held by a tenancy of the entirety, although if the Bankruptcy Court was correct in finding that a tenancy by the entirety exists with respect to a partial interest in the Property, Roberts–Dude does not challenge the Bankruptcy Court's determination that it could not strip off the Chase mortgage loan.

After the Bankruptcy Court issued its Order on the Motion to Bifurcate, Roberts–Dude converted her bankruptcy from proceedings under Chapter 11 to proceedings under Chapter 7. In view of this development, Chase contends that Roberts–Dude's appeal has become moot since, according to Chase, the strip-down mechanism under Sections 506(a) and (d) is not available under Chapter 7.

## II. Jurisdiction

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Rule 8001(b), Fed. R. Bankr.P. *Tobkin v. Calderin*, No. 12–22692–MC, 2012 WL 3609867, at *1 (S.D.Fla. Aug. 22, 2012).

Here, Roberts–Dude properly seeks review under 28 U.S.C. § 158(a)(1). D.E. 1 at 1. Roberts–Dude timely filed this appeal, and, except for Chase's contention that the issue on appeal has become moot, the parties do not dispute jurisdiction. This Court has agrees that it enjoys jurisdiction.

## III. Legal Standards

■ In reviewing bankruptcy-court judgments, a district court functions as an appellate court. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993). Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard. *In re Club Associates*, 951 F.2d 1223, 1228 (11th Cir.1992) (citing *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir.1990)); *In re Goerg*, 930 F.2d 1563 1566 (11th Cir.1991); *see* Fed. R. Bankr.Pro. 7052, 8013; Fed. R. Bankr.Pro. 8013 ("[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). District courts may not make independent factual findings on appeal. *In re JLJ Inc.*, 988 F.2d at 1116. If the bankruptcy court is silent or ambiguous as to an outcome determinative of a factual question, the case must be remanded to the bankruptcy court for the necessary factual findings. *Id.* (citing *In re Cornelison*, 901 F.2d 1073, 1075 (11th Cir.1990); *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir.1990)).

■ In contrast, the legal conclusions by the Bankruptcy Court are reviewed *de novo*. *In re Club Assoc.*, 951 F.2d at 1228–29 (citations omitted). Thus, this Court reviews the Bankruptcy Court's factual findings in this case for clear error and its legal conclusions *de novo*. *In re Globe Manuf. Corp.*, 567 F.3d 1291, 1296 (11th Cir.2009); *In re Club*, 951 F.2d at 1228–29.

## IV. Discussion

### A. This Appeal Is Not Moot

■ Chase suggests that the conversion of the bankruptcy case from a Chapter 11 proceeding to a Chapter 7 proceeding after the Bankruptcy Court entered the Order on the Motion to Bifurcate renders this appeal moot because the strip-off relief that Roberts–Dude seeks under Sections 506(a) and (d) is not available in Chapter 7 proceedings. In support of this position,

Chase cites *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), which held that, in Chapter 7 proceedings, a partially unsecured claim could not be stripped down under Sections 506(a) and (d). According to Chase, the reasoning of *Dewsnup* forecloses the conclusion that the strip-off relief permitted under Sections 506(a) and (d) is available for a totally unsecured claim in a Chapter 7 proceeding. Chase recognizes that in *In re McNeal,* 477 Fed.Appx. 562 (11th Cir. 2012), the Eleventh Circuit recently reached the opposite conclusion, citing *Folendore v. United States Small Business Administration,* 862 F.2d 1537 (11th Cir. 1989), as binding precedent allowing for the application of Sections 506(a) and (d) in Chapter 7 proceedings. But Chase submits that *In re McNeal* is not binding on this Court because it is an unpublished decision.

Since Chase filed its brief, however, the Eleventh Circuit has issued its final version of *In re McNeal* as a published opinion in the Federal Reporter. *See id.,* ⸺ F.3d ⸺, 2012 WL 8964264 (11th Cir. 2012). As a result, the decision is binding on the district courts of this circuit.

In *In re McNeal,* the Eleventh Circuit noted that "[a] few bankruptcy court decisions within [the Eleventh Circuit] ... have treated *Folendore* as abrogated by *Dewsnup* ...." 2012 WL 8964254, at *2. But, the Eleventh Circuit explained, *Folendore* still controls on the issue of whether the stripdown and strip-off relief permitted by Sections 506(a) and (d) remains available to a Chapter 7 debtor with a completely unsecured claim. *Id.* The court reasoned,

> "Under our prior panel precedent rule, a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point.' " *Atl. Sounding Co., Inc. v.*

*Townsend,* 496 F.3d 1282, 1284 (11th Cir.2007). Because *Dewsnup* disallowed only a "strip down" of a partially secured mortgage lien and did not address a "strip off" of a wholly unsecured lien, it is not "clearly on point" with the facts in *Folendore* or with the facts at issue in this appeal.

Although the Supreme Court's reasoning in *Dewsnup* seems to reject the plain language analysis that we used in *Folendore,* " '[t]here is, of course, an important difference between the holding in a case and the reasoning that supports that holding.' " *Atl. Sounding Co., Inc.,* 496 F.3d at 1284 [ (citation omitted) ]. "[T]hat the reasoning of an intervening high court decision is at odds with that of our prior decision is no basis for a panel to depart from our prior decision." *Id.* "As we have stated, '[o]bedience to a Supreme Court decision is one thing, extrapolating from its implications a holding on an issue that was not before that Court in order to upend settled circuit law is another thing.' " *Id.* In fact, the Supreme Court—noting the ambiguities in the bankruptcy code and ... "the difficulty of interpreting the statute in a single opinion that would apply to all possible fact situations"—limited its *Dewsnup* decision expressly to the precise issue raised by the facts of the case. 112 S.Ct. at 778.

*Id.,* ⸺ F.3d at ⸺. In view of the binding precedent that *In re McNeal* and *Folendore* represent, the Court cannot conclude that the conversion of the proceedings in this case to occur under Chapter 7 precludes the strip-off relief that Roberts–Dude seeks with regard to the Chase third mortgage. Accordingly, this appeal is not moot.

**B.   *The Bankruptcy Court Did Not Err***

Roberts–Dude contends that no part of the Property is owned by Roberts–Dude

and her husband as tenants by the entirety. For support, Roberts–Dude relies on the deed history of the Property and the stated intent of Roberts–Dude and her husbands, as expressed in their Affidavits filed in the Bankruptcy Court proceedings.[3]

With regard to the deed history, Roberts–Dude argues that the omission of the phrase "tenants by the entirety" from the 2007 and 2011 conveyances demonstrates the intent of Roberts–Dude and her husband that they no longer possess the Property in any part as tenants by the entirety. She points to the Affidavits as further evidence of the intent in 2007 to cease holding the Property as tenants by the entirety.

A review of the 2007 and 2011 deeds reveals that, while neither deed expressly states that the Property is deeded in any part to Roberts–Dude and Dude as tenants by the entirety, nor does either deed expressly provide that the Property is not deeded to Roberts–Dude and Dude as tenants by the entirety. Moreover, the 2007 deed, which states that it is between Roberts–Dude and Dude "as tenants by the entireties," as "Grantor," and Roberts–Dude as "Grantee," conveys only 96% of the Property to Roberts–Dude and does not purport to make any changes to the remaining 4% of the Property expressly identified as being held by Roberts–Dude and her husband as "tenants by the entireties." Thus, contrary to the contentions of Roberts–Dude and Dude in their Affidavits, the actual language of the 2007 deed conveys an intention to retain 4% of the Property to continue to be held by Roberts–Dude and Dude as "tenants by the entireties."

As for the 2011 deed, the handwritten legend on the top of the deed claims that the deed was executed as a "re-recording to include notary and acknowledgment" of the 2007 deed. That, in and of itself, suggests that no material change was intended by the 2011 deed. On the other hand, despite this language, the 2011 deed quitclaims an undivided 98% interest to Roberts–Dude, as opposed to the 96% interest under the 2007 deed, and, instead of remaining silent with regard to the remaining 2% of the Property, the deed purports to convey "an undivided … 2% … interest" to "Harald Dude and Denise Dude, husband and wife."

■ Thus, the Court must determine (1) whether the language in the 2011 deed, in light of the deed history, reflects the existence of a tenancy by the entirety with regard to the 2%, and, if so, (2) whether the Court may consider any evidence outside the documents themselves in evaluating whether, under the 2011 deed, 2% of the Property is held by Roberts–Dude and her husband as tenants by the entirety. In analyzing these issues, the Court observes first that the nature of a debtor's interest in property is determined by state law. *In re Sinnreich*, 391 F.3d 1295, 1297 (11th Cir.2004) (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

■ Under Florida law, where real property is owned by a husband and wife, "the ownership in the name of both spouses vests title in them as tenants by the entireties." *Beal Bank SSB v. Almand & Assocs.*, 780 So.2d 45, 54 (Fla.2001) (citation omitted). As a result, "[a] conveyance to spouses as husband and wife creates an estate by the entirety in the absence of

---

**3.** Like the Bankruptcy Court, this Court assumes without deciding that all deeds discussed in this Order are valid.

express language showing a contrary intent." *Id.* (citation and internal quotation marks omitted); *Espenship v. Carter,* 514 So.2d 1108, 1109 (Fla. 1st DCA 1987) ("A conveyance to husband and wife creates an estate by the entirety when there is no express language in the deed demonstrating a contrary intent") (citing *In re Estate of Suggs,* 405 So.2d 1360 (Fla. 5th DCA 1981)). In fact, where real property is involved, a deed need not even describe the owners as husband and wife nor set forth their marital relationship in order to establish a tenancy by the entireties between married owners of a single piece of real property. *Id.* at 54 n. 9 (citation omitted). Thus, under Florida law, property titled in the name of both spouses is presumptively considered to be a tenancy by the entireties. *Id.* Significantly, this presumption "is not rebuttable, ... although it could be set aside if fraud were proven." *Bridgeview Bank Grp. v. Callaghan,* 84 So.3d 1154, 1155 (Fla. 4th DCA 2012) (citing *Losey v. Losey,* 221 So.2d 417 (Fla.1969)).

As the *Bridgeview Bank* Court explained, if a rebuttable presumption applied to the title of real property, substantial problems with titles would result: "Which title insurer could feel secure in insuring property having a conveyance to a husband and wife in the chain of title, if that title could be rebutted by evidence extrinsic to the deed itself? The integrity of the title to real property could be called into question when titles could be overturned in litigation by rebuttable presumptions." 84 So.3d at 1156.

■ These Florida cases clarify that where a deed is titled in the name of two people as husband and wife—even if the deed does not use the phrase "tenancy by the entirety"—the estate is a tenancy by the entirety, and it matters not what extrinsic evidence may exist of the husband and wife's contrary intentions in titling the deed in their names as husband and wife. Only in the case of fraud does an exception to this rule exist.

■ Here, the 2011 deed titles an "undivided ... 2% ... interest" in the Property in the name of "Harald Dude and Denise Dude, husband and wife." As a result, by its terms, the deed creates a tenancy by the entirety in 2% of the Property. Nor do Roberts–Dude's and Dude's Affidavits affect the analysis. Under Florida law, unless fraud is involved—and no such allegation exists in this case—extrinsic evidence of the parties' intentions in titling their property in a certain way is irrelevant to whether the parties, in fact, created a tenancy by the entirety.[4] Thus, the Bankruptcy Court did not err when it concluded that Roberts–Dude and Dude hold a 2% interest in the Property as a tenancy by the entirety.

■ Finally, Roberts–Dude's argument that a partial interest in the Property cannot be held by a tenancy of the entirety lacks merit. In this respect, Roberts–Dude asserts that the Property cannot be held in part by a tenancy of the entirety because such a situation results in the lack of at least one of the six unities required to own property as a tenancy by

4. Therefore, the Court need not consider the facts that the Affidavits were executed well after the 2011 deed was recorded and during the bankruptcy proceedings, that the notation on the 2011 deed states that the 2011 deed was simply a re-recording of the 2007 deed, or that the 2011 deed employs the term "undivided" to describe Roberts–Dude and

Dude's 2% interest in the Property in evaluating the credibility of the Affidavits. The credibility of the Affidavits simply makes no difference to the analysis. Accordingly, here, where no allegations of fraud have been raised, no evidentiary hearing was required to ascertain whether a 2% interest in the Property is held as a tenancy by the entirety.

the entireties. Under Florida law, property held as a tenancy by the entirety bears six characteristics: "(1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the [property] must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names." *Beal Bank*, 780 So.2d at 52. Here, Roberts–Dude contends that the identity of interest does not exist because Roberts–Dude owns 98% of the Property herself and shares the remaining 2% with her husband. Because each spouse does not have control over what Roberts–Dude defines as the entire estate, Roberts–Dude reasons that no tenancy of the entirety can exist.

The problem with Roberts–Dude's analysis arises from the fact that Roberts–Dude and her husband do, in fact, share a unity of interests in the 2% interest of the Property. In other words, both Roberts–Dude and Dude enjoy precisely the same interests in the 2% of the Property deeded to them as husband and wife. Indeed, the deed itself describes the conveyance of an "undivided" interest to Roberts–Dude and Dude as husband and wife.

The fact that 98% of the Property is not held jointly by Roberts–Dude and her husband does not make the 2% that is any less of a tenancy by the entirety. As the Eleventh Circuit's predecessor court has explained,

"Where real property is conveyed or devised to husband and wife and a third person or persons, the husband and wife, being but one person in law, will together take only an undivided moiety or half of the estate, leaving the other half to the third person, or, if there are two other grantees or devisees, then husband and wife will take[ ] only one third of the subject matter, and so on in accordance with the number of persons entitled. As between themselves, a husband and wife are tenants by the entirety of their share, but as to the third person they are together a joint tenant or tenant in common with him . . . ."

*Winchester v. Wells,* 265 F.2d 405, 408 (5th Cir.1959) (quoting 41 C.J.S. Husband and Wife § 31f, p. 454); *see also In re Mitchell,* 344 B.R. 171, 174 (Bankr.M.D.Fla.2006) (citing *Winchester,* 265 F.2d at 407). In accordance with this rule, Florida courts have repeatedly described as tenancies by the entirety interests of less than 100% in property titled in the names of a husband and wife. *See, e.g., Lauck v. Maissen,* 347 So.2d 795, 797 (Fla. 2d DCA 1977) ("the appellant made and recorded a deed of the remaining undivided 55 percent interest in the ranch land to the Maissens as husband and wife, thereby creating a tenancy by the entirety"); *Losey v. Losey,* 221 So.2d 417 (Fla.1969) (where parents held tenancies by the entirety in properties and conveyed 25% interests in those properties to each of their three children, describing in partnership agreements that the parents and three children held an "equal" interest in the properties, the remaining 25% of the properties continued to be held by the parents by a tenancy of the entirety); *Aderhold v. Aderhold,* 983 So.2d 43 (Fla. 1st DCA 2008) (concluding that husband and wife took a one-half interest in the property as a tenancy by the entirety and that the husband's mother held the other one-half undivided interest in the property). Roberts–Dude and her husband's tenancy by the entirety in the 2% interest in the Property is no different, and the mere fact that Roberts–Dude, rather than a third person, holds the remaining 98% of the Property does not somehow render inapplicable the Florida rules governing tenan-

cies by the entirety. In short, Roberts–Dude and her husband hold a 2% interest in the Property as a tenancy by the entirety, and the ruling of the Bankruptcy Court must be affirmed.

### V.  Conclusion

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order on appeal is **AFFIRMED.** The case is **DISMISSED.** The Clerk of this Court shall **CLOSE** this case. Any pending motions are **DENIED AS MOOT.**

**DONE and ORDERED.**