[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10641
Non-Argument Calendar

_____

D.C. Docket No. 0:19-cv-61338-RKA
Bkcy. Adv. No. 18-01019-PGH
Bkcy No. 17-23522-PGH

In re: PETER ALLAN WIZENBERG,

Debtor.

_____

PETER ALLAN WIZENBERG,

Plaintiff-Appellant,

versus

HOWARD WIZENBERG,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 15, 2020)

Before WILSON, JORDAN, and GRANT, Circuit Judges.

PER CURIAM:

Anna Wizenberg's death in 2010 sparked a long and bitter intrafamily dispute between her sons, Peter and Howard Wizenberg. What started as a probate case and then moved into bankruptcy court is now before us as an appeal of a district court order imposing sanctions under 28 U.S.C. § 1927 against Peter, a *pro se* debtor. The district court's order adopted the bankruptcy court's report, which recommended sanctioning him for his conduct in an adversarial proceeding filed by his brother Howard, who is a creditor in the bankruptcy case.

Peter, a member of the Florida bar who holds himself out as a bankruptcy attorney, argues that the district court abused its discretion in sanctioning him. The conduct that led to the sanctions included, among other things, his repeated "shushing" of opposing counsel during a deposition; his submission of lengthy and superfluous filings, one in which he wrote a nonsensical haiku; his argument that the bankruptcy court lacked subject-matter jurisdiction to preside over a dispute explicitly provided for in the Bankruptcy Code; and his assertion that he did not know what a privilege log was despite being a barred attorney.

In addition, Peter contends that the bankruptcy court was required to conduct an evidentiary hearing before sanctioning him, and he challenges the time entries that the bankruptcy court cited to determine the sanctions amount in its report and

2

recommendation.  Howard responds that Peter waived both these arguments by failing to raise either of them before the bankruptcy court.  He further asserts that the sanctions were warranted.  For reasons set out below, we affirm.

## I

Anna Wizenberg (we refer to her as "Ann" because that is what her sons called her in their disputes), owned property and other assets at the time of her death, and a probate proceeding was initiated shortly thereafter.  *See In re: Anna Wizenburg*, No. 2010CP002092 (Fla. Circuit Ct.), Docs. 1, 2, 3.  Her son Peter was initially appointed as personal representative of Ann's estate, but several months later, his brother Howard filed a petition to remove him.  *Id.*, Doc. 22.  This request was granted in February of 2017, *see id.*, Doc. 193, following two separate state court disputes between Peter and Howard.  *See Peter Wizenberg v. Howard Wizenberg*, No. 2012CA005131 (Fla Circuit Ct.); *Howard Wizenberg v. Peter Wizenberg*, No. 2013CA002460 (Fla. Circuit Ct.).  There was a contempt hearing scheduled in the probate case for November of 2017, but before it was held, Peter filed for Chapter 7 bankruptcy protection, which automatically stayed all state court proceedings against him.  *See* 11 U.S.C. § 362.

In his Chapter 7 petition, Peter listed Howard as holding a nonpriority unsecured claim that was disputed, contingent, and arose from litigation.  Howard then filed an adversary proceeding in which he sought to declare Peter's debt to him

3

nondischargeable under 11 U.S.C. § 523(a)(4), which exempts from discharge debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," and under 11 U.S.C. § 523(a)(6), which exempts from discharge debt "for willful and malicious injury by the debtor to another entity." Howard alleged in the adversary complaint that Peter failed to distribute estate funds in accordance with the "Ann Wizenberg Revocable Trust Agreement" and that he appropriated property from Ann's estate for his own personal use.

Peter filed a motion to dismiss, which the bankruptcy court denied. Howard and Peter filed cross-motions for summary judgment, which the bankruptcy court also denied.

Then, Peter filed a 69-page motion to dismiss Howard's amended complaint for lack of subject-matter jurisdiction. His argument was that Howard's adversary complaint "seeks nondischargeability of a nonexistent debt, a 'phantom debt[,]'[ ] an alleged debt" and that "no such debt has ever existed or exists or *even possibly could have ever existed*."

Howard responded to the motion to dismiss on the main bankruptcy case docket and moved for sanctions under 28 U.S.C. § 1927, arguing that "[o]ther than to needlessly increase the costs of litigation" there was "no good faith basis" for Peter to take the position that the bankruptcy court lacked subject-matter jurisdiction.

4

Peter then filed a 153-page motion for reconsideration of the bankruptcy court's order denying him summary judgment, including in it accusations of domestic violence against Howard, as well as other immaterial details about family life. The filing concluded with what the bankruptcy court would later describe as "pointless poetry"—the haiku, which read: "All know: talk is cheap; Liars can claim anything; No evidence?! Balk!" The bankruptcy court denied the motion for reconsideration.

Howard deposed Peter on August 6, 2018, and Peter deposed Howard the next day. Throughout Howard's deposition, Peter engaged in several hostile exchanges with Howard and opposing counsel. Peter asked repetitive and unprofessional questions, told opposing counsel to "[s]hush, shush, shush," and bickered with opposing counsel on the record. The next day, Howard moved the bankruptcy court to compel Peter to produce a privilege log, and said that when Peter was deposed, he testified to the existence of relevant and responsive documents that he did not produce based on attorney-client privilege. Howard said that Peter had not produced a privilege log and that he claimed not to know what one was. The bankruptcy court granted Howard's motion and ordered Peter to produce a privilege log detailing which documents and communications he thought were protected.

Several months later, Howard supplemented his motion for sanctions, alleging that when Peter's wife was deposed, Howard's counsel questioned her for

5

approximately five minutes and then Peter "ask[ed] wholly irrelevant and leading questions of his wife on 're-direct' for approximately one hour." Howard also accused Peter of "attempt[ing] to question" him, at his own deposition, about "incidents when they were children." In another motion—for an order to show cause why Peter should not be held in contempt of court—Howard argued that, although Peter had timely produced the privilege log per the bankruptcy court's order, he "utterly failed to provide any sort of detail as directed[.]"

The bankruptcy court entered a show cause order, and Peter responded with a filing in which he said he had told Howard's lawyer that he "didn't know much of anything" about privilege logs; he also accused Howard of acting in bad faith. At a hearing on Howard's pending motions for sanctions, the bankruptcy court said it was "unhappy" with Peter because he was a lawyer who had practiced for several years but claimed not to know what a privilege log was. The bankruptcy court awarded Howard $2,880 in attorney's fees.

Peter moved for partial summary judgment as to Count I, pertaining to 11 U.S.C. § 523(a)(6). On November 28, 2018, Howard moved for an extension of time to respond to the motion—and Peter opposed his request, disputing the appropriate length of time for a Thanksgiving holiday, which he said "would, at most, be four calendar days, from Thursday through Sunday." The motion for extension of time was granted, Howard filed his response to the motion for partial

6

summary judgment, and Peter replied with assertions that Howard made false statements and "deceptively cite[d]" case law.

The adversary proceeding was tried before the bankruptcy court in January of 2019 and, ahead of the trial, Peter filed a 326-page opening statement (including exhibits) with the court. At trial, Peter did not produce an exhibit register but instead handed the bankruptcy court a "loose-leaf group of papers." When Peter cross-examined Howard, the bankruptcy court had to repeatedly admonish him for impermissibly objecting to Howard's answers to his own questions, for asking Howard if he had any evidence to support his statements, and for ignoring the bankruptcy court's rulings on objections. At one point, the bankruptcy court told Peter that his conduct was "very frustrating" because it had "ruled on a point of law" and Peter continued to ask questions that were "render[ed] irrelevant" by its ruling. Later, when Peter was examining his own witness, the bankruptcy court told him that he was being "very ridiculous" by "blatantly attempting to coach a witness in the course of a trial as to what she would testify to."

Howard filed a renewed and supplemental motion for sanctions on February 1, 2019, claiming that he had incurred "thousands of dollars in needless attorneys' fees" as a result of Peter's "bad faith litigation tactics." He said that his attorney's fees totaled $24,880, and he asked the court to impose sanctions under 28 U.S.C. §1927 in that amount. Later that month, the bankruptcy court granted final judgment

7

in the adversary proceeding, ruling that the debts allegedly owed to Howard were nondischargeable under 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 523(a)(6). The bankruptcy court found that Peter, acting pursuant to the durable power of attorney, allowed his wife to remove items from his mother's house while Ann was still alive—and also that he engaged in a scheme designed to ensure that Howard got as little possible from Ann's estate. It granted relief from the automatic stay so the parties could continue litigating their state court dispute.

In March of 2019, Peter responded to Howard's post-trial motion for sanctions, characterizing the motion as an example of Howard's "demonstrably false, malicious, frivolous and vexatious filings"—but failing to request an evidentiary hearing or specifically challenge any of the time entries in Howard's motion. Howard in his reply countered that Peter's response was untimely; he also gave specific examples of Peter's bad faith and attached exhibits to support the time entries.

After a hearing, the bankruptcy court awarded Howard sanctions under 28 U.S.C. § 1927. The bankruptcy court first determined that, although Peter was a *pro se* defendant, he was an attorney who had previously practiced in bankruptcy court in the Southern District of Florida. Then, the bankruptcy court found that it was a court of the United States within the meaning of the statute; if the district court on

8

appeal determined otherwise, the bankruptcy court noted, its opinion should instead be treated as a report & recommendation ("R&R").

The bankruptcy court found Peter had acted in bad faith throughout the course of the litigation and had "suffocated [the] docket with painfully long and frivolous pleadings, many of which [were] based in neither law nor fact." It also highlighted Peter's withholding of documentary evidence, and his rude and repetitive questions during depositions. And the bankruptcy court addressed Peter's motion to dismiss based on subject-matter jurisdiction, saying, "[w]hether a claim is dischargeable is wholly within this Court's jurisdiction and is routinely brought before this Court for determination." Because of Peter's litigiousness, the bankruptcy court said, the adversary proceeding took "fourteen months and over 250 docket entries." The bankruptcy court determined that sanctions were appropriate, reviewed each billable item submitted by Howard's attorney, and determined the total costs recoverable were $9,850.

Peter appealed the sanctions order in the district court, arguing that the district court should treat the order as a set of proposed findings and conclusions of law. He said the bankruptcy court erred in finding his conduct sanctionable, in sanctioning him without an evidentiary hearing, in awarding sanctions without finding a claim of excess costs, and in treating § 1927 as a "catch-all." He also challenged the 22 time entries the bankruptcy court cited to determine the amount recoverable.

9

Howard responded that sanctions were proper and that Peter had waived his arguments regarding an evidentiary hearing and the 22 time entries.

The district court determined that the bankruptcy court was not a court of the United States within the statutory reach of 28 U.S.C. § 1927, but found that, because it was treating the bankruptcy court's order as an R&R, it could impose sanctions itself under the statute. The district court pointed out that Peter raised many of his arguments for the first time on appeal, and it declined to consider those arguments that had not been timely raised. After the district court adopted the R&R in full, Peter appealed.

## II

On appeal, Peter argues (1) that he cannot be sanctioned under § 1927 for his conduct in a bankruptcy case; (2) that the sanctions motion was frivolous because it was a "catch-all motion for generalized sanctions"; (3) that his motion to dismiss based on subject-matter jurisdiction was not frivolous; (4) that the bankruptcy court deprived him of due process under the Fifth Amendment because, he says, the sanctions motion did not state its factual or legal grounds with any particularity; and (5) that the district court deprived him of due process by finding that he waived his right to raise his arguments regarding the evidentiary hearing and the 22 time entries.

We review both the bankruptcy court's and district court's conclusions of law *de novo* and the bankruptcy court's findings of fact for clear error. *See In re Sublett*,

10

895 F.2d 1381, 1383 (11th Cir. 1990). "We review a district court's award of sanctions under 28 U.S.C. § 1927 for abuse of discretion." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1390 (11th Cir. 1997).

## A

We first address Peter's argument that bankruptcy courts do not have the authority to impose sanctions under 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Peter asks that "the term '. . . any case . . .' be interpreted to mean and refer to *only* cases that are conducted in courts of the United States or any Territory thereof." This presents a question of law that we review *de novo*.

The district court found that the bankruptcy court did not have the authority to impose sanctions and instead treated the bankruptcy court's order as an R&R. Peter does not challenge this ruling—which he argued for in the district court—but now takes this argument a step further, and asks us to construe the term "any case"

11

as referring to only cases in Article III Courts, meaning the district court could not sanction him for conduct in a bankruptcy case. [1]

Peter has likely waived this argument, but even had he raised it below, it would be without merit because the district courts have original jurisdiction of all Title 11 bankruptcy cases. *See* 28 U.S.C. § 1334. Peter's Chapter 7 case therefore formally originated in an Article III Court—the Southern District of Florida—and was referred to the bankruptcy court pursuant to S.D. Fla. Local Rule 87.2(a), which provides that "all proceedings under Title 11 . . . are referred to the Bankruptcy Judges for this District and shall be commenced in the Bankruptcy Court pursuant to the Local Bankruptcy Rules." *See also* 28 U.S.C. § 157(a) ("[e]ach district court may provide that any or all cases under title 11 . . . shall be referred to the bankruptcy judges for the district.")

## B

We now turn to Peter's next two arguments—that the sanctions motion was frivolous and that his own motion to dismiss for lack of subject-matter jurisdiction was not frivolous. These both relate to a broader argument that the district court

---

[1] We acknowledge, as the district court pointed out, that bankruptcy courts within the Eleventh Circuit, as well as the other Circuits, have split on the question whether bankruptcy courts may impose sanctions under 28 U.S.C. § 1927. But we do not address this issue because Peter has not raised it on appeal.

abused its discretion in imposing sanctions.  To impose sanctions under § 1927, a court must find that "three essential requirements" are present:

> First, the attorney must engage in unreasonable and vexatious conduct. Second, that unreasonable and vexatious conduct must be conduct that multiplies the proceedings.  Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (internal quotation marks omitted).   An attorney multiplies proceedings unreasonably and vexatiously "only when the attorney's conduct is so egregious that it is tantamount to bad faith."  *Id.* (internal quotation marks omitted).  The question of bad faith "turns not on the attorney's subjective intent, but on the attorney's objective conduct."  *Id.*

As a general matter, we conclude that the district court did not abuse its discretion in sanctioning Peter because his objective conduct, detailed above, was egregious enough to rise to the level of bad faith.  This conduct dragged out proceedings and caused Howard to incur excess costs.   Peter was rude and unprofessional at depositions and at trial; he asked repetitive and hostile questions in examining witnesses, and he ignored the judge's rulings at trial.  He also filed voluminous and irrelevant motions—including one that challenged the bankruptcy court's subject-matter jurisdiction to determine the dischargeability of a debt in bankruptcy, and another that contained a haiku.  His actions were not excused by his

13

*pro se* status because he is a member of the Florida Bar who had previously appeared in bankruptcy court in the Southern District of Florida. Howard's motion for sanctions therefore was not frivolous, as Peter claims.

What *was* frivolous, however, was Peter's motion to dismiss Count II of Howard's adversary complaint (the 11 U.S.C. § 524(a)(4) count) for lack of subject-matter jurisdiction. On appeal, Peter reiterates his argument that the bankruptcy court did not have subject-matter jurisdiction because "[t]he absolute and unquestionable nonexistence of the phantom debt alleged in Count II entails that the U.S. Bankruptcy Court lacks subject matter jurisdiction over Count II and should dismiss Count II." He contends that "[t]he district court erred by completely misapprehending what the word 'phantom' means" and asks us to "take judicial notice that the word 'phantom' means 'a figment of the imagination,' *Merriam-Webster* defines it, as an adjective, as 'illusory,' 'fictitious,' 'dummy.'"

We do not read the record as supporting a conclusion that the district court misunderstood the word "phantom." The fact that Peter contests the debt does not have any bearing on whether the bankruptcy court has jurisdiction to adjudicate disputes over whether that debt is dischargeable. Indeed, Peter's contesting the debt was clear from his Chapter 7 petition, where he listed Howard as holding a "disputed" unsecured claim. Peter's assertion that the debt did not exist was not an objectively reasonable basis to challenge the bankruptcy court's jurisdiction,

14

because "[b]ankruptcy judges may hear and determine all cases under [T]itle 11 and all proceedings arising under [T]itle 11, or arising in a case under [T]itle 11."  28 U.S.C. § 157.  The bankruptcy court obviously had subject-matter jurisdiction to consider Howard's adversary complaint seeking to exempt a debt from discharge under 11 U.S.C. § 523(a).  Peter's argument to the contrary was frivolous.

## C

Peter's next argument is that the bankruptcy court deprived him of due process by imposing sanctions based on Howard's motion.  We "review[ ] assertions of constitutional error *de novo*."  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1303 (11th Cir. 2009).

The sanctions motion was not so vague as to deprive Peter of due process.  The motion included several specific examples of sanctionable behavior—including that which we noted above, in Part II.B, as well as Peter's failure to submit a sufficiently detailed privilege log as directed by the bankruptcy court's order.

## D

Peter also argues that the bankruptcy court should have held an evidentiary hearing before it imposed sanctions and that the bankruptcy court erred in accepting the 22 time entries listed in the sanctions motion.  He writes in his brief: "There is no evidence that I voluntarily, and that I intentionally, relinquished my right to raise the issues I raised in my briefs, and why in the world would I??"  Howard counters

15

that Peter never requested an evidentiary hearing in the bankruptcy court and that Peter likewise did not preserve his challenge to the 22 attorney time entries.

"In reviewing bankruptcy court judgments, a district court functions as an appellate court." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). Generally, "an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). Although we have said that we may review a new argument for plain error "if it involves a pure question of law and if refusal to consider it will result in a miscarriage of justice," *In re Lett*, 632 F.3d 1216, 1226 (11th Cir. 2011), we have long expressed a "reluctance to intrude upon the province of the bankruptcy courts below by reaching issues not brought before them, as bankruptcy cases are to be tried in bankruptcy court." *Id*.

We have identified five circumstances where we have permitted issues to be raised for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004). The first is if an issue "involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *Id*. The second is if "the appellant raises an objection to an order which he had no opportunity to raise at the district court level." *Id*. The third is if "the interest of substantial justice is at stake." *Id*. The fourth is if "the proper resolution is beyond any doubt." *Id*. And the fifth is if the issue "presents significant questions of general impact or

16

of great public concern." *Id*.   Peter argues that all these circumstances are present in this case.

The leeway generally given to construction of *pro se* litigants' briefs does not apply here for two reasons.  First, licensed attorneys proceeding *pro se* are not entitled to the advantage of liberal construction of their pleadings that is normally given to *pro se* litigants.  *See Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).  Second, even if Peter were entitled to such leeway, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned."  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (internal citation omitted).  A party fails to adequately brief an argument when it "does not plainly and prominently raise it" or when it "makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

Peter has abandoned his claim that the bankruptcy court should have conducted an evidentiary hearing because he failed to adequately brief the issue in his opening brief—saying instead things like, "case law maintains that sanctions based on factual allegations of conduct outside the courtroom, must be based on *record* evidence obtained in an *evidentiary* hearing," without citing any case law. And even if he had not abandoned his claim in this Court, he waived it before the district court.

17

Peter likewise waived his challenges to the 22 attorney time entries by failing to present any of those challenges to the bankruptcy court. Instead, Peter argued only that Howard brought a "false and malicious, meritless case" and that he failed to show how the alleged bad-faith conduct led to incur excess fees. He also failed to raise his challenges to the time entries at the hearing on the sanctions motion.

None of the *Access Now* exceptions apply in this case. *See* 385 F.3d at 1332. Peter's appeal does not hinge on "pure questions of law," *id*, but rather mixed questions of law and fact. He had ample opportunity before the bankruptcy court to raise his arguments regarding the evidentiary hearing and the 22 time entries. *See id*. This appeal also does not implicate interests of substantial justice. Proper resolution of Peter's challenges is not "beyond any doubt," *id*,—and, to the extent that it is, that cuts against Peter, not in his favor. Nor does this appeal present any "significant questions of general impact or of great public concern." *Id*.

Peter has therefore abandoned or waived these challenges, and we decline to consider them on this appeal.

### III

Finally, Howard has filed a motion seeking appellate attorneys' fees under Fed. R. App. P. 38, which allows us to "award just damages and single or double costs to the appellee" if we determine "that an appeal is frivolous." Howard asserts

that he has incurred $10,980.00 in expenses for both appeals and asks that we award him attorneys' fees in that amount.

Peter responds with an irrelevant citation to a transcript of a hearing—in an unrelated case with unrelated parties—where Howard's attorney was orally reprimanded by the same judge for filing a motion for sanctions. Peter argues that Howard's motion is "pure 'hogwash'" and that it "is a frivolous motion because it is totally devoid of any particularized grounds." He says the motion "is itself sanctionable."

We have "awarded sanctions under Rule 38, in the form of reasonable attorney's fees and double costs, when a party ignored the governing law and relied on clearly frivolous arguments." *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1359 (11th Cir. 2018) (internal quotation marks and citations omitted). We find that this record supports a Rule 38 award of attorney fees. Peter, a self-proclaimed bankruptcy attorney, filed an 88-page opening brief littered with exclamation points and rants about what he views as a grave miscarriage of justice. He fails to coherently cite case law, though he cites Bugs Bunny. The brief is difficult to follow, and deciphering and reorganizing his arguments wasted taxpayer resources that otherwise could have been spent on cases "worthy of consideration." *Sun-Tek Industries Inc. v. Kennedy Sky-Lites, Inc.*, 865 F.2d 1254, 1255 (Fed. Cir. 1989) (cited favorably in *Jackson*).

19

Because Peter relied on "clearly frivolous arguments," *Jackson*, 898 F.3d at 1359, we grant Howard's motion for appellate attorney fees.  We limit the award to the costs that he incurred for this appeal, because there is a corresponding Rule 38 motion pending in the district court seeking fees for that appeal.  The costs for this appeal total $3,390, and we award Howard fees in that amount.

## IV

We affirm the district court order imposing sanctions against Peter, and award Rule 38 sanctions against Peter.

**AFFIRMED; RULE 38 SANCTIONS IMPOSED.**