[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11742

Non-Argument Calendar

_____

In Re: NRP LEASE HOLDINGS, LLC, et al.,

                                                        Debtors.

_____

1944 BEACH BOULEVARD, LLC,

                                                        Plaintiff-Appellant,

versus

LIVE OAK BANKING COMPANY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 3:20-cv-01344-TJC

_____

Before NEWSOM, LAGOA, and ANDERSON, Circuit Judges.

LAGOA, Circuit Judge:

1944 Beach Boulevard, LLC, a debtor in possession, filed a complaint to avoid Live Oak Banking Company's blanket lien on all of its assets. The bankruptcy court denied Beach Boulevard's motion for summary judgment and granted Live Oak's cross-motion for summary judgment, concluding that Live Oak had perfected its security interest, notwithstanding defects in its financing statements. The district court affirmed the bankruptcy court.

The issues in this appeal are based solely on Florida statutory law relating to the perfection of security interests. In Florida, a creditor's financing statement that does not list the debtor's correct name is, as a matter of statutory prescription, "seriously misleading" and therefore ineffective to perfect the creditor's security interest. Fla. Stat. § 679.5061(2). There is no dispute that Live Oak's financing statements did not list Beach Boulevard's correct name. Florida Statute § 679.5061(3), however, establishes a safe harbor for defective financing statements, and whether Live Oak perfected its

security interest depends upon whether its financing statements fall within that statutory safe harbor.

This is a question of significant importance affecting creditors and debtors located or doing business in Florida, and at least two lower courts, applying Florida law, have reached different conclusions regarding the application of the statutory safe harbor. Principles of comity and federalism instruct us that "[b]ecause the only authoritative voice on [Florida] law is the [Florida] Supreme Court, it is axiomatic that that court is the best one to decide issues of [Florida] law." *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997). We therefore respectfully certify this issue of Florida law discussed below to the highest court of that state.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case comes to us from a bankruptcy proceeding under Chapter 11 of the United States Bankruptcy Code. In a bankruptcy proceeding, trustees are sometimes appointed to manage and administer the debtor's estate. Title 11 U.S.C. § 544(a) grants a bankruptcy trustee the status of a hypothetical lien creditor "who has completed the legal process for perfection of its lien upon all property available for the satisfaction of its claim against the debtor," thereby taking priority over all unperfected security interests. *In re Summit Staffing Polk Cnty., Inc.*, 305 B.R. 347, 350 (Bankr. M.D. Fla. 2003). Where a trustee is not appointed, a debtor—referred to as a debtor in possession—continues to manage and administer its estate during the proceedings. By virtue of 11 U.S.C. § 1107, a

debtor in possession, such as Beach Boulevard, generally has the rights and powers of a bankruptcy trustee. *In re Int'l Yacht & Tennis, Inc.*, 922 F.2d 659, 661 (11th Cir. 1991).

Beach Boulevard is a limited liability company organized under the laws of Florida and operates a family entertainment center in Jacksonville, Florida, known as "Adventure Landing." On December 5, 2019, Beach Boulevard and its affiliated businesses filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

As of the petition date, Beach Boulevard and its affiliates were jointly and severally liable to Live Oak on two loans guaranteed by the U.S. Small Business Administration, totaling approximately $3,000,000.00. The two loans purport to be secured by a blanket lien on all of Beach Boulevard's assets. Attempting to perfect its security interests in these assets, Live Oak filed two UCC-1 Financing Statements with the Florida Secured Transaction Registry (the "Registry"). These filing statements identify the debtor as "1944 Beach Blvd., LLC," instead of its legal name, "1944 Beach Boulevard, LLC," as listed in the articles of organization filed with the Florida Secretary of State.

In its complaint, Beach Boulevard asserted that Live Oak's UCC-1 financing statements were "seriously misleading" and therefore unperfected, and that Beach Boulevard could use its power as a hypothetical lien creditor to avoid Live Oak's lien on its assets. The sole basis for Beach Boulevard's claim is that the financing statements failed to sufficiently "provide the name of the

debtor," as required by Florida law, because they abbreviated "Boulevard" to "Blvd." Beach Boulevard claimed that, because of this mistake, a search of the Registry under its correct legal name, "1944 Beach Boulevard, LLC," did not reveal the existence of Live Oak's asserted liens. In addition to the allegations in its complaint, Beach Boulevard submitted affidavits to this effect in support of its motion for summary judgment.

Live Oak answered the complaint and asserted its affirmative defenses. In pertinent part, Live Oak asserted that its financing statements substantially complied with Florida law and that abbreviating "Boulevard" to "Blvd." was a minor error or omission that does not render the financing statements defective or seriously misleading. Live Oak pointed out that, while its liens do not appear on the first page of results for a search in the Registry under "1944 Beach Boulevard, LLC," the search results are displayed in alphabetical order and "merely clicking the blue '<<PREVIOUS' tab one time" will reveal the existence of its liens. Thus, Live Oak claimed that the filing statements were not "seriously misleading" because they can be found within one page of the initial search results.

After Beach Boulevard filed its motion for summary judgment, Live Oak filed its cross-motion and attached three declarations attesting that a search of the Registry under the debtor name "1944 Beach Boulevard, LLC," produces the following:

> On the 1st page of the search results, there is a "Previous" command tab and a "Next" command tab, and

> above the command tabs there is a statement that ad-
> vises the searcher to "[u]se the Previous and Next but-
> tons to display additional results." . . .
>
> Upon clicking the blue "<<PREVIOUS" command
> tab on the search results screen just one (1) time, I
> found two (2) UCC Financing Statements that iden-
> tify "1944 Beach Blvd., LLC" as the debtor.  In fact,
> they are the very first two entries that appear imme-
> diately before three (3) other financing statements for
> "1944 Beach Boulevard, LLC," due to the fact that the
> search results are displayed in alphabetical order. . . .

Live Oak also attached a declaration that attested to the uniqueness of Florida's Registry compared to other states' filing search systems.

The bankruptcy court denied Beach Boulevard's motion for summary judgment and granted Live Oak's cross-motion for summary judgment.  Relying on two bankruptcy court decisions, *In re Summit Staffing Polk County, Inc.*, 305 B.R. 347 (Bankr. M.D. Fla. 2003), and *In re John's Bean Farm of Homestead, Inc.*, 378 B.R. 385 (Bankr. S.D. Fla. 2007), the bankruptcy court determined that Live Oak's financing statements fell "within the Safe Harbor provision of Fla. Stat. Section 679.5061(1) because the Registry's standard search logic discloses the Financing Statements on the page imme-diately preceding the initial page on the Registry's website."  The bankruptcy court therefore concluded that the financing state-ments "are not seriously misleading and are effective to perfect [Live Oak's] security interest in all of [Beach Boulevard's] assets."

The bankruptcy court then entered judgment in favor of Live Oak on the complaint.

Sitting in an appellate capacity, the district court affirmed the bankruptcy court's order without discussion of the issues in the case, stating that the bankruptcy court "committed no errors of law and made no clearly erroneous factual findings." This appeal ensued.

## II.    ANALYSIS

On appeal, Beach Boulevard argues that the district court erred in affirming the bankruptcy court's order granting summary judgment to Live Oak. It contends that Live Oak's financing statements were seriously misleading as a matter of law because a search of the Registry under its legal name would not produce the defective financing statements on the first page of results, but rather would require a searcher to click to the preceding page.

### A.  Perfection of Security Interests Under Florida Law

Under 11 U.S.C. § 544(a), the trustee in a bankruptcy case is granted the status of a hypothetical lien creditor and may avoid any lien that is not properly perfected under state law as of the petition date. And, under 11 U.S.C. § 1107, a debtor in possession, such as Beach Boulevard, generally has the rights, powers, and duties of a bankruptcy trustee. *In re Int'l Yacht & Tennis*, 922 F.2d at 661.

As directed by § 544(a), we look to state law—here, Florida—to determine whether Live Oak perfected its security interest in Beach Boulevard's assets. *In re Summit Staffing*, 305 B.R. at 350.

Florida has adopted Article 9 of the Uniform Commercial Code, which governs secured transactions, including perfection of security interests. *See* Fla. Stat. ch. 679; *In re Summit Staffing*, 305 B.R. at 350. In Florida, a lien creditor takes priority over the rights of a holder of any unperfected security interest. Fla. Stat. § 679.3171(1)(b)(1) ("A security interest . . . is subordinate to the rights of: . . . a person who becomes a lien creditor before the . . . security interest . . . is perfected"). To perfect a security interest, a creditor must file a "financing statement" with the Registry. *Id.* § 679.5011. A financing statement must provide three pieces of information to be considered sufficient for perfection: (1) the name of the debtor; (2) the name of the secured party; and (3) a description of the collateral covered by the financing statement. *Id.* § 679.5021(1).

A financing statement that substantially complies with the statutory requirements "is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." *Id.* § 679.5061(1). As it relates to the debtor name requirement, Florida law expressly provides that "a financing statement that fails sufficiently to provide the name of the debtor in accordance with [Florida law] is seriously misleading" and therefore ineffective to perfect a security interest. *Id.* § 679.5061(2).

In the case of Beach Boulevard, an LLC organized under Florida law, the debtor's name listed on a financing statement is sufficient "*only* if the financing statement provides the name that

is stated to be the registered organization's name on the public organic record most recently filed with [the Florida Department of State]." *Id.* § 679.5031(1)(a) (emphasis added).  The Florida Department of State's Division of Corporations maintains an online index of the legal names of all entities authorized to transact business in Florida.  *See* Sunbiz.org, https://dos.myflorida.com/sunbiz/ (last visited Nov. 18, 2021).  Using this index, a creditor need only confirm the correct name on the Sunbiz.org website and copy it into the financing statement.

Florida law also provides a narrow safe-harbor provision relating to the debtor's name requirement:

> If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with [the statute], the name provided does not make the financing statement seriously misleading.

*Id.* § 679.5061(3).  Florida's statutory regime, then, is that any deviation from a debtor's legal name in a financing statement renders the statement "seriously misleading" as a matter of law (and thus ineffective to perfect the security interest), unless performing a search of the Registry using the debtor's correct legal name and the Registry's standard search logic would disclose the defective statement.

### B.  Perfection, Then and Now

Under the previous iteration of Article 9, as adopted by Florida and repealed in 2002, *see In re Summit Staffing*, 305 B.R. at 350 & n.1, a financing statement that substantially complied with the requirements of the statute would be effective, notwithstanding minor errors that were not seriously misleading, *see* Fla. Stat. § 679.402(6)–(7) (2001) (repealed). But the old statute provided no definition of "seriously misleading." *In re John's Bean Farm*, 378 B.R. at 389. Absent a statutory definition, courts eventually adopted a "reasonably diligent searcher" standard to determine whether an error in the debtor's name was seriously misleading. *Id.* This standard "required the reviewing court to determine, on a case-by-case basis, whether a hypothetical reasonable searcher would have been able to discover the non-conforming financing statement despite the error in a debtor's name." *Id.* The standard thus asked courts to "second-guess what searchers should or should not have been able to discover had they tried hard enough." *Id.* (quoting Margit Livingston, *"A Rose by Any Other Name Would Smell as Sweet" (or Would It?); Filing and Searching in Article 9's Public Records*, 2007 B.Y.U. L. Rev. 111, 124 (2007)). Unsurprisingly, this flexible, fact-intensive standard "created extensive litigation and fragmented or contradictory decisions." *Id.*

When Florida adopted revised § 9-506 of the UCC, as Florida Statute § 679.5061, the Florida Legislature abrogated the judicially-created "reasonably diligent searcher" standard. Looking at the plain language of section 679.5061, the rule is clear: a financing statement with the debtor's incorrect legal name is effective only if

a search of the Registry using the debtor's correct name and the Registry's standard search logic produces that financing statement. If the financing statement with the debtor's incorrect name is not produced after this search, then the financing statement is ineffective as a matter of law. *Id.* § 679.5061(2)–(3).

As noted by two bankruptcy courts, Florida's adoption of this revision to Article 9 of the UCC puts the burden on the filing creditor to include the debtor's correct legal name in its financing statement and removes the burden from searchers to conduct multiple searches. *See In re John's Bean Farm*, 378 B.R. at 390 ("Post-revision case law is fairly well settled that the burden is squarely on the creditor to correctly identify the name of the debtor."); *In re Summit Staffing,* 305 B.R. at 354–55 ("The revisions to Article 9 remove some of the burden placed on searchers under the former law, and do not require multiple searches using variations on the debtor's name. . . . Revised Article 9 rejects the duty of a searcher to search using any names other than the name of the debtor indicated on the public record of the debtor's jurisdiction of organization."). As discussed below, however, these courts disagree about what a "search" means for purposes of the statutory safe harbor.

### C.  The Live Oak Financing Statements

It is undisputed that Live Oak's financing statements do not appear on the initial page of twenty names generated by a Registry search using Beach Boulevard's correct legal name, but that they do appear on an immediately preceding page. The user can view that preceding page by clicking the "PREVIOUS" command tab on

the screen displaying the page listing the twenty names, and above the tab is the statement, "[u]se the Previous and Next buttons to display additional results." Beach Boulevard contends that the initial page of twenty names is both the beginning and the end of the "seriously misleading" inquiry, while Live Oak contends that it is just the beginning and that its financing statement appearing on the preceding page falls into the statutory safe harbor.

A more detailed description of the Registry is helpful, as the statutory safe harbor is expressly based on the Registry's structure and search logic. The Registry is Florida's "centralized Uniform Commercial Code (UCC) filing and retrieval system containing initial financing statements, amendments, assignments, and other UCC filings as authorized by Florida Statutes Chapter 679." *See* Florida Secured Transaction Registry, https://www.floridaucc.com/uccweb/ (last visited Nov. 18, 2021). In its order below, the bankruptcy court described the mechanics of a Registry search:

> When a debtor's name is entered into the search engine, an alphabetical list with twenty names is displayed. If the debtor's actual name is found, it will appear at the top of the list. If the search does not produce the debtor's name, the nearest match is at the top of the alphabetical list. There is a "Previous" command arrow at the top of the list, with the statement "Use the Previous and Next buttons to *display additional search results*." To locate the immediately

preceding names on the alphabetical list, a searcher
must click the "Previous" command arrow.

(emphasis in original).  Turning to the search rules, the bankruptcy
court explained that the Registry provides the following explana-
tion of its search program:

The name list search program will compact the name
entered according to the rules stated above.  The pro-
gram will then provide a list of names (with additional
information) beginning with the name whose com-
pact key is equal to or greater than the compacted
version of the search name entered.  A list of names
(currently 20) is displayed for the user to select to see
the detail record.

The *user may select to move forward or backward* in
the name list in compact name order.  If this option is
chosen, the screen will display the next or prior list of
names in compact order.

(emphasis in original).  Thus, the Registry's search logic takes a user
to the point in the alphabetical list of all debtor names contained in
the Registry that most closely matches the name input for the
search.  The search generates a page listing the twenty closest
matches to the name in alphabetical order; the pages preceding and
following this list of twenty names contain the entire remainder of
the Registry, with the debtors' names listed in ascending and de-
scending alphabetical order from the initial page of twenty names.
Each search therefore allows a user to review using the "Previous"
and "Next" command tabs, although each search may take the user

to a different "starting point" within the Registry depending on the debtor name input for the search.

In determining that Live Oak's financing statements were not seriously misleading even though they did not appear on the first page listing the twenty names generated by inputting Beach Boulevard's correct name, the bankruptcy court held that the search results "appear[] to include more than the initial page displayed." The court reached this conclusion because the explanation of the Registry's search program "references the option that a user *may* select to move forward or backward in the list" and "[t]he explanation also states that *currently* there is a list of 20 names displayed." (first emphasis added).

In a case with almost identical facts, another bankruptcy court sitting in the Middle District of Florida held that a defective filing statement is not seriously misleading if a search of the Registry under the debtor's correct name would produce the defective statement on the page preceding the initial search results; that is, searchers have a duty to "check the immediately preceding names as well as the immediately succeeding names on an alphabetical list if there is not an exact match of the debtor's correct name." *In re Summit Staffing*, 305 B.R. at 354–55. In *In re Summit Staffing*, the creditor failed to update its financing statements when the debtor incorporated. *Id.* at 349. The financing statements listed "Randy A. Vincent" as the debtor and "Summit Staffing" as an additional

debtor, though the legal name of the debtor was changed to "Summit Staffing of Polk County, Inc."[1]  *Id.*  While the defective filing statements did not appear on the first page produced by entering the debtor's name into the Registry, the court determined that

> [s]ince the name immediately following Summit Staffing of Polk County, Inc. is produced at the top of the alphabetical list, and since the filing office's directions state that the searcher should use the "Previous" command to display additional search results, clearly a searcher should check the preceding names on the alphabetical list.

*Id.* at 354.

The bankruptcy court in *In re Summit Staffing* further stated that it was "clear" that "a searcher should check the immediately preceding names as well as the immediately succeeding names on an alphabetical list if there is not an exact match of the debtor's correct name" because, "[a]lthough Revised Article 9 does not require that a searcher exercise reasonable diligence in the selection of the names to be searched or the number of searches to conduct,

---

[1] Florida Statute § 679.508 governs the effectiveness of a financing statement where, as in *In re Summit Staffing*, a new debtor becomes bound by a security agreement entered into before its incorporation.  Under this statute, a financing statement naming an original debtor will be effective unless the differences between the name of the original debtor and the name of the new debtor causes the financing statements to be seriously misleading.  *Id.* § 679.508(2).  The statute provides that "seriously misleading" means the same standard set forth in Florida Statute § 679.5061, the statute at issue here.

the revisions to Article 9 do not entirely remove the duty imposed on a searcher to be reasonably diligent." *Id.* at 354–55. Acknowledging that "it is conceivable that one could use the 'Previous' command to go back to the beginning of the alphabetical list," the court concluded that the "issue of 'reasonableness' develops at some point because the listing is an alphabetical listing," *Id.* at 354. Thus, while "[a] searcher is not required to conduct multiple searches," he "must reasonably examine the results of the proper search using the debtor's correct name to determine if any financing statements relating to the debtor are disclosed by that search." *Id.* at 355.

Subsequently, in *In re John's Bean Farm*, a bankruptcy court in the Southern District of Florida concluded that the *In re Summit Staffing* court simply changed the timing of the "reasonably diligent searcher" inquiry that was supposed to have been abrogated by the UCC revisions. *In re John's Bean Farm* involved financing statements filed under "John Bean Farms, Inc.," instead of the debtor's legal name, "John's Bean Farm of Homestead, Inc." 378 B.R. at 386. The financing statements at issue could only be found by clicking "previous" sixty times from the initial page produced using the Registry's search logic. *Id.* at 393. Notwithstanding the factual differences between the search results in its case and those in *In re Summit Staffing*—i.e., sixty pages away from the correct name versus one page away—the court in *In re John's Bean Farm* determined that the only page that matters for purposes of the statutory safe harbor is the initial page of results displaying twenty

names. *Id.* at 395. The court found that the statute is unambiguous, has no "reasonableness" qualifier, and establishes a bright-line rule. *Id.* As the court explained, "the very purpose of this statute was to eliminate the need for, indeed, the ability of, a judge to inject himself or herself in the determination of what is seriously misleading." *Id.* Because "Florida's standard search logic is set by statute[,] . . . [t]he search logic clearly leads to one result—a single page on which names appear." *Id.* As it was undisputed that the financing statement at issue did not appear on that page, "the financing statement [was] seriously misleading and summary judgment in the Trustee's favor [was] appropriate." *Id.*

This appeal therefore depends upon the meaning of "search" as used in the statutory phrase "a search of the records . . . using the filing office's standard search logic." The *In re John's Bean Farm* court concluded that the statutorily-established "standard search logic" generates "a single page on which [twenty] names appear" and that page constitutes the entirety of the "search" for purposes of the safe harbor. *Id.* Under that court's logic, if a financing statement with the debtor's incorrect name does not appear on that page, it is ineffective. In contrast, the *In re Summit Staffing* court concluded that the initial page of twenty names does not constitute the entirety of the "search"; instead, the "search" consists of the entirety of the Registry, which can be scrolled to from the initial page of twenty names. *See* 305 B.R. at 354–55. And that court determined the searcher "must reasonably examine the results of the search" to determine whether it discloses a financing statement

18                     Opinion of the Court                    21-11742

with the debtor's incorrect legal name.  *Id.* at 355.  Thus, we are confronted with a fairly well-defined split over whether section 679.5061(3) establishes a bright-line rule or a more flexible, reasonableness-based regime.

The statutory reference to "standard search logic" means that the relevant "search" is limited to the results generated by use of that search logic.  On the one hand, it is undisputed that the Registry's standard search logic involves a comparison of the name input by the user with the names listed in the database and the subsequent display of a single page listing the twenty names most closely matching the search name.  The court in *In re John's Bean Farm* concluded that the "search" as used in section 679.5061(3) is limited to those twenty names—and only those twenty names— for purposes of the safe harbor.

On the other hand, it is also undisputed that a search using the Registry's search logic merely takes the user to a given point in the Registry database based on the debtor name input for the search.  The page listing the twenty names identified based on the user's input is preceded and followed by pages listing all debtor names in the Registry database in ascending and descending alphabetical order.  The initial page of twenty names states, "Use the Previous and Next buttons to display additional search results," and a user can scroll backwards and forward from the initial page and can review any financing statement in the Registry database without running any additional searches.  The court in *In re Summit Staffing* therefore concluded that the "search" described in section

679.0581(3) is not limited to the initial page listing twenty names—the Registry search logic simply takes the user to the most relevant starting point to review the contents of the search.

Under this latter interpretation, every financing statement in the Registry database is part of a "search," even if the user has to scroll backwards or forwards to find it.  Taken to its natural conclusion, no financing statement with the incorrect debtor's name would ever be ineffective, because each search "would disclose" every financing statement.  Recognizing that "it is conceivable that one could use the 'Previous' command to go back to the beginning of the alphabetical list," the court in *In re Summit Staffing* concluded that there is a "reasonableness" component, which "develops at some point," to the user's obligation to review the search conducted under section 679.5061(3).  305 B.R. at 354.  As the court in *In re John's Bean Farm* noted, this reasonableness qualifier to a search conducted pursuant to section 679.0581(3) is not found in the statutory text.  378 B.R. at 395.

All of this is to say that the existing case law contains two competing interpretations of what "search" means for purposes of the section 679.5061(3) safe harbor.  Under one interpretation, the Florida Legislature adopted a bright line rule—if a financing statement with the debtor's incorrect name does not appear on the initial page of twenty names, it has not been disclosed in the search and is therefore ineffective.  Under the other interpretation, which the court in this case followed, the Florida Legislature created a flexible standard under which a financing statement with the

debtor's incorrect name is effective as long as it is within a reasonable number of pages from the initial page of twenty names.

### D. Certification to the Florida Supreme Court Is Appropriate

Although the facts of this case involve a single creditor and debtor, the legal principles involved may have broad effects on the citizens of Florida and those who do business with them. The rules governing secured transactions form an integral part of our modern commercial system, and uniformity in their application promotes predictability and stability in economic relationships. Allowing the development of diametrically opposed rules within the same state promotes the opposite. Moreover, the answer to how Florida's statutory safe harbor operates is exclusively one of Florida law.[2]

When faced with substantial doubt on a dispositive state law issue, our "better option is to certify the question to the state supreme court." *In re Mooney*, 812 F.3d 1276, 1283 (11th Cir. 2016)

---

[2] The bankruptcy court below erred when it took into consideration other states' systems, including the fact that the search logics used by those states produce more results and were therefore more creditor friendly. For example, according to one of the declarations filed in the case, Georgia allows users to conduct a "stem search" instead of requiring the exact debtor name and allows a searcher to display up to 100 results per page. The UCC, however, contemplates that states will use different search logics, and the Florida Legislature specifically directed that the "seriously misleading" inquiry should be based on the Florida Registry's own search logic. That decision lies wholly within the Florida Legislature's prerogative.

(quoting *In re Cassell*, 688 F.3d 1291, 1300 (11th Cir. 2012)).  Thus, as a matter of federalism and comity, dispositive issues of Florida law should be first presented to the Florida Supreme Court to decide.  *See Blue Cross & Blue Shield of Ala.*, 116 F.3d at 1413.  Indeed, "[c]ertification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism."  *Id.*

We therefore certify to the Florida Supreme Court the following questions under article V, section 3(b)(6) of the Florida constitution and Florida Rule of Appellate Procedure 9.150[3]:

> (1) Is the "search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic," as provided for by Florida Statute § 679.5061(3), limited to or otherwise satisfied by the initial page of twenty names displayed to the user of the Registry's search function?
>
> (2) If not, does that search consist of all names in the filing office's database, which the user can browse

---

[3] Article V, section 3(b)(6) of the Florida constitution provides that the Florida Supreme Court "[m]ay review a question of law certified by the Supreme Court of the United States or a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida."  Florida Rule of Appellate Procedure 9.150 establishes the procedure governing those discretionary proceedings to review such certified questions.

to using the command tabs displayed on the initial page?

(3) If the search consists of all names in the filing office's database, are there any limitations on a user's obligation to review the names and, if so, what factors should courts consider when determining whether a user has satisfied those obligations?

Our phrasing of these questions "is intended only as a guide." *United States v. Clarke*, 780 F.3d 1131, 1133 (11th Cir. 2015). We do not mean to restrict the Florida Supreme Court's consideration of the issues or its scope of inquiry. *See Blue Cross & Blue Shield of Ala.*, 116 F.3d at 1414. The Florida Supreme Court may, as it perceives them, restate the issues and modify the manner in which the answers are given. *Id.* Finally, should the Florida Supreme Court exercise its discretion to answer these questions, its response will be "conclusive on the issue[s] certified." *Edwards v. Kia Motors of Am., Inc.*, 554 F.3d 943, 945 (11th Cir. 2009).

## III.    CONCLUSION

For the foregoing reasons, we defer our decision in this case until the Florida Supreme Court has had the opportunity to consider our certified questions and determine whether to exercise its discretion in answering them. The entire record of this case, including the parties' briefs, is transmitted to the Florida Supreme Court.

**QUESTIONS CERTIFIED.**