# Supreme Court of Florida

_____

No. SC21-1717

_____

**1944 BEACH BOULEVARD, LLC,**
Appellant,

vs.

**LIVE OAK BANKING COMPANY,**
Appellee.

August 25, 2022

LAWSON, J.

This case is before the Court for review of three questions of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that are determinative of a cause pending in that court and for which there appears to be no controlling precedent. We have jurisdiction. _See_ art. V, § 3(b)(6), Fla. Const.

The certified questions concern the interpretation of section 679.5061(3), Florida Statutes (2021), which creates a safe harbor for financing statements that are otherwise ineffective to perfect a security interest because they fail to correctly name the debtor as

required by Florida law. The safe harbor applies when a financing statement that fails to correctly name the debtor is disclosed by "a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any." § 679.5061(3). Collectively, the Eleventh Circuit's questions ask us to delineate the proper scope of the "search" of the filing office's records as that term is used in the safe harbor provision. *See In re NRP Lease Holdings, LLC*, 20 F.4th 746, 758 (11th Cir. 2021).

However, as explained below, we find dispositive a threshold question that was not expressly addressed or certified by the Eleventh Circuit, namely: "Is the filing office's use of a 'standard search logic' necessary to trigger the safe harbor protection of section 679.5061(3)?" Reading section 679.5061 in its entirety, our answer is yes. Because Florida's filing office, the Florida Secured Transaction Registry, does not employ a "standard search logic," we hold that the safe harbor cannot apply, which means that a financing statement that fails to correctly name the debtor as required by Florida law is "seriously misleading" and therefore ineffective. § 679.5061(2). Accordingly, it is unnecessary to reach

the Eleventh Circuit's three certified questions concerning the proper scope of the "search" under the safe harbor provision.

## BACKGROUND

1944 Beach Boulevard, LLC (Beach Boulevard), is a limited liability company organized and existing under the laws of Florida. Beach Boulevard and its affiliates were jointly and severally indebted to Live Oak Banking Company (Live Oak) in the approximate amount of $3,000,000 on account of two loans, each in the original principal amount of $2,500,000. The two loans purport to be secured by a blanket lien on all of Beach Boulevard's assets. To perfect its claimed security interests, Live Oak filed two UCC-1 Financing Statements with the Florida Secured Transaction Registry (Registry). However, the financing statements filed by Live Oak improperly name the debtor as "1944 Beach *Blvd.*, LLC" instead of "1944 Beach *Boulevard*, LLC." (Emphasis added.)

On December 5, 2019, Beach Boulevard and its affiliates filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code. When Beach Boulevard's manager conducted a search of the Registry, Live Oak's financing statements did not appear on the page of twenty results generated by the

Registry.  Live Oak's financing statements did, however, appear on the immediately preceding page.

Beach Boulevard filed a complaint in the bankruptcy court, which asserted that Live Oak's financing statements failed to correctly name the debtor as required by Florida law, making the statements "seriously misleading" within the meaning of section 679.5061(2) and therefore ineffective to perfect Live Oak's security interest.  *See In re NRP Lease Holdings*, 20 F.4th at 750.  Seeking the statutory safe harbor protection provided by section 679.5061(3) for financing statements that would otherwise be ineffective for failing to correctly name the debtor, *see* § 679.5061(2), Live Oak asserted in its answer to Beach Boulevard's complaint the affirmative defense that "its financing statements substantially complied with Florida law and that abbreviating 'Boulevard' to 'Blvd.' was a minor error or omission that does not render the financing statements defective or seriously misleading." *In re NRP Lease Holdings*, 20 F.4th at 751.  Live Oak also "claimed that the filing statements were not 'seriously misleading' because they can be found within one page of the initial search results."  *Id.* In support, Live Oak explained that "while its liens do not appear on

the first page of results for a search in the Registry under '1944 Beach Boulevard, LLC,' the search results are displayed in alphabetical order and 'merely clicking the blue "<<PREVIOUS" tab one time' will reveal the existence of its liens." *Id.*

Beach Boulevard and Live Oak filed cross-motions for summary judgment. *Id.* The bankruptcy court denied Beach Boulevard's motion and granted Live Oak's motion, concluding that Live Oak's financing statement fell within the statutory safe harbor "because the Registry's standard search logic discloses the financing statements on the page immediately preceding the initial page on the Registry's website." *Id.* The bankruptcy court, therefore, ruled that the financing statements filed by Live Oak were "not seriously misleading and [were] effective to perfect [Live Oak's] security interest in all of [Beach Boulevard's] assets." *Id.*

Beach Boulevard appealed the bankruptcy court's decision to the federal district court, which reviewed the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re NRP Lease Holdings, LLC*, No. 3:20-cv-1344-TJC, 2021 WL 2143912, at *1 (M.D. Fla. May 21, 2021). Applying these standards, the district court affirmed the bankruptcy court's

decision, writing only that "the bankruptcy court committed no errors of law and made no clearly erroneous factual findings." *Id.* Beach Boulevard appealed the district court's decision to the Eleventh Circuit. *In re NRP Lease Holdings*, 20 F.4th at 752.

On appeal, the Eleventh Circuit identified "two competing interpretations" in the case law regarding the scope of the search that is necessary to determine whether the safe harbor of section 679.5061(3) applies. *Id.* at 757. It cogently explained the split as follows:

> The *In re John's Bean Farm* [*of Homestead, Inc.*, 378 B.R. 385 (Bankr. S.D. Fla. 2007),] court concluded that the statutorily-established "standard search logic" generates "a single page on which [twenty] names appear" and that page constitutes the entirety of the "search" for purposes of the safe harbor. *Id.* Under that court's logic, if a financing statement with the debtor's incorrect name does not appear on that page, it is ineffective. In contrast, the *In re Summit Staffing* [*Polk County, Inc.*, 305 B.R. 347 (Bankr. M.D. Fla. 2003),] court concluded that the initial page of twenty names does not constitute the entirety of the "search"; instead, the "search" consists of the entirety of the Registry, which can be scrolled to from the initial page of twenty names. *See* 305 B.R. at 354-55. And that court determined the searcher "must reasonably examine the results of the search" to determine whether it discloses a financing statement with the debtor's incorrect legal name. *Id.* at 355.

*In re NRP Lease Holdings*, 20 F.4th at 756.

Faced with substantial doubt as to how this Court would resolve the split, which it found to be a matter of state law dispositive of the case before it, the Eleventh Circuit certified to this Court the following questions:

> (1) Is the "search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic," as provided for by Florida Statute § 679.5061(3), limited to or otherwise satisfied by the initial page of twenty names displayed to the user of the Registry's search function?
>
> (2) If not, does that search consist of all names in the filing office's database, which the user can browse to using the command tabs displayed on the initial page?
>
> (3) If the search consists of all names in the filing office's database, are there any limitations on a user's obligation to review the names and, if so, what factors should courts consider when determining whether a user has satisfied those obligations?

*Id.* at 758.

## ANALYSIS

The certified questions present issues of statutory interpretation concerning the scope of the search necessary to determine whether a financing statement that would otherwise be ineffective because it fails to correctly name the debtor falls within the safe harbor established by section 679.5061(3). As we recently explained, when interpreting a statute, "the goal of interpretation is

- 7 -

to arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.' " *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 947 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)).

Thus, we begin with the statute's text. The three subsections of section 679.5061 relevant to the certified questions read as follows:

> (1) A financing statement substantially complying with the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

> (2) Except as otherwise provided in subsection (3), a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1) is seriously misleading.

> (3) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1), the name provided does not make the financing statement seriously misleading.

§ 679.5061(1)-(3).[1]

The first subsection states that a financing statement may contain minor errors or omissions and remain effective to perfect a security interest, unless the error or omission renders the financing statement "seriously misleading." § 679.5061(1). However, the Florida Legislature goes on to define "seriously misleading" as it relates to errors or omissions in naming the debtor in the second and third subsections. Thus, while subsection (1) generally applies to errors or omissions in financing statements, subsections (2) and (3) govern financing statements like those at issue in this case that contain errors or omissions in *naming* the debtor. *See Fla. Virtual Sch. v. K12, Inc.*, 148 So. 3d 97, 102 (Fla. 2014) (explaining that "a specific statute will control over a general statute").

For financing statements that fail to correctly name the debtor, section 679.5061(2), does two things. First, the subsection creates a zero-tolerance rule, under which a financing statement that fails to name the debtor as directed in section 679.5031(1), Florida

---

[1]. The only other provision of section 679.5061 is subsection (4), which addresses a situation not at issue here.

Statutes (2021), is "seriously misleading" and therefore ineffective. § 679.5061(2). Section 679.5031(1)(a), Florida Statutes (2021), specifies how to correctly name a debtor where, as in this case, "the debtor is a registered organization" as follows: "[a] financing statement sufficiently provides the name of the debtor . . . only if the financing statement provides the name that is stated to be the registered organization's name on the public organic record most recently filed with or enacted by the registered organization's jurisdiction of organization that purports to state, amend, or restate the registered organization's name." Second, subsection (2) also carves out an exception to its zero-tolerance rule—the safe harbor of subsection (3).

The safe harbor exception codified in section 679.5061(3) provides that a financing statement with errors or omissions in naming the debtor will still be effective to perfect a security interest so long as "a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose" the financing statement. § 679.5061(3).

As evinced by the Eleventh Circuit's certified questions, section 679.5061(3) does not define the scope of the search of the

filing office's records that is necessary to determine whether the safe harbor applies. Its only direction is to conduct the search "using the filing office's standard search logic, if any," with no explanation of what "standard search logic" means. *Id.*

However, the meaning of "standard search logic" as used in Article 9 of the Uniform Commercial Code, which governs secured transactions and which Florida has adopted, *see In re NRP Lease Holdings*, 20 F.4th at 752 (citing ch. 679, Fla. Stat; *In re Summit Staffing*, 305 B.R. at 350), is well understood within the industry. *See Hancock Advertising, Inc. v. Dep't of Transp.*, 549 So. 2d 1086, 1089 (Fla. 3d DCA 1989) (concluding that the court was "entitled to consider" the "practical construction which has in fact been adopted by the industry" to resolve "the statutory interpretation problem before [it]"). Within the industry, "standard search logic" is reasonably accepted to mean a procedure that "identif[ies] the set (which might be empty) of financing statements on file that constitute hits for the search," or stated differently, that produces an "[u]nambiguous identification of hits." Kenneth C. Kettering, *Standard Search Logic under Article 9 and the Florida Debacle*, 66 U. Miami L. Rev. 907, 913 (2012). This is because "[t]he whole point of

the 'standard search logic rule' is to establish an objective procedure for determining whether a given financing statement is sufficient.  A procedure that does not identify which financing statements are hits and which are not is alien to the purpose of the rule."  *Id.*

The problem in Florida—as cogently explained by the amicus—is that although the Registry offers an option for searching its records, that option is not a "standard search logic."  Instead of returning a finite list of hits when a search is conducted, the Registry returns a list of twenty names starting with the name that most closely matches the name entered.  That list of names is but a point from which the user can navigate forward and backward through all of the names indexed in the Registry.  In other words, "a search" of the Registry returns an index of all of the financing statements in the Registry.  The Registry's current search option also produces inconsistent results depending upon the date a search is conducted.  This is true because as financing statements are filed, amended, and removed, the position of a financing statement on the Registry's index changes, which means that a

financing statement included in a list of twenty today might not be on the same list tomorrow.

We agree with Professor Kettering that a "search procedure that returns as hits, for any search string, all financing statements in the filing office's database cannot rationally be treated as a 'standard search logic.'" *Id.*; *see also* Steven L. Harris & Charles W. Mooney, Jr., *Teacher's Manual for Security Interests in Personal Property: Cases, Problems and Materials* 51 (6th ed. 2016) (opining that the search option offered by Florida's Registry "should not be considered a 'standard search logic'" because "the system does not yield particular 'hits'").

In certifying its questions concerning the proper scope of the search required to determine whether the safe harbor of section 679.5061(3) applies, the Eleventh Circuit recognized these problems with the Registry's current search option, *see In re NRP Lease Holdings*, 20 F.4th at 756-57, but it nevertheless determined that the Registry employs a "standard search logic," *see, e.g., id.* at 753, 756. In addressing the certified questions, we cannot accept the Registry's search option as the "standard search logic" contemplated by the statute; rather, the Florida Constitution

requires us to decide de novo what "standard search logic" means. *See* art. V, § 21, Fla. Const.

We adopt the definition of "standard search logic" accepted in the secured transactions industry, which requires the search to identify specific hits, if any, and hold that under this definition the search option offered by the Registry, which returns the entire index, is not a "standard search logic." Moreover, because we read section 679.5061(2)-(3) as conditioning the safe harbor's application on the ability to search the Registry's records using a "standard search logic," it is unnecessary for us to address the Eleventh Circuit's certified questions. Instead, we hold that section 679.5061(3) provides one way and one way only to search the filing office's records for purposes of determining whether the safe harbor applies to a financing statement that incorrectly names a debtor— i.e., "using the filing office's standard search logic, if any." Because the Registry lacks a "standard search logic," the search contemplated by section 679.5061(3) is impossible, which means that filers are left with the zero-tolerance rule of section 679.5061(2).

This interpretation is further bolstered by reading section 679.5061(2)-(3) together with section 679.5031(1), which plainly places the burden to correctly name the debtor on the filer of a financing statement. *See Fla. Dep't of State v. Martin*, 916 So. 2d 763, 768 (Fla. 2005) ("The doctrine of *in pari materia* is a principle of statutory construction that requires that statutes relating to the same subject or object be construed together to harmonize the statutes and to give effect to the Legislature's intent."). By interpreting section 679.5061(2)-(3) as being intolerant of any errors or omissions in naming the debtor—no matter how minor—unless and until the Registry implements a "standard search logic" necessary to determine whether the safe harbor applies, we faithfully adhere to the text of section 679.5061(2)-(3), keep the burden on the filer consistent with section 679.5031(1), and avoid imposing requirements on the searcher that are not specified in the statute.

## CONCLUSION

The Eleventh Circuit's certified questions ask us to define the scope of the search required to determine whether a financing statement that fails to correctly name the debtor is nevertheless

deemed effective under the safe harbor of section 679.5061(3). However, because we hold that the Florida Secured Transaction Registry's failure to employ a "standard search logic" precludes the safe harbor from applying in the first instance, we find it unnecessary to reach the certified questions. Unless and until the Registry employs a standard search logic, under the zero-tolerance rule of section 679.5061(2), any financing statement that fails to correctly name the debtor as required by section 679.5031(1) is "seriously misleading" and therefore ineffective. Having explained why our interpretation of section 679.5061 makes it unnecessary to reach the certified questions, we return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

MUÑIZ, C.J., and CANADY, POLSTON, LABARGA, COURIEL, and GROSSHANS, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 21-11742

Richard R. Thames of Thames Markey, Jacksonville, Florida,

for Appellant

Ezra Z. Scrivanich of McMichael Taylor Gray, LLC, Deerfield Beach, Florida,

    for Appellee

Scott G. Hawkins of Jones Foster P.A., West Palm Beach, Florida,

    for Amicus Curiae Commercial Law Amicus Initiative