[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11742

Non-Argument Calendar

_____

In Re: NRP LEASE HOLDINGS, LLC, et al.,

Debtors.

_____

1944 BEACH BOULEVARD, LLC,

Plaintiff-Appellant,

versus

LIVE OAK BANKING COMPANY,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:20-cv-01344-TJC

———————————

Before NEWSOM, LAGOA, and ANDERSON, Circuit Judges.

LAGOA, Circuit Judge:

This case returns to us for disposition from the Florida Supreme Court, to which we certified three questions of Florida law. *1944 Beach Boulevard, LLC v. Live Oak Banking Co.* (*In re NRP Lease Holdings, LLC*) ("*1944 Beach I*"), 20 F.4th 746, 758 (11th Cir. 2021). In considering our certified questions, the Florida Supreme Court found dispositive a threshold issue that we did not expressly address: "Is the filing office's use of a 'standard search logic' necessary to trigger the safe harbor protection of section 679.5061(3)?" *1944 Beach Boulevard, LLC v. Live Oak Banking Co.* ("*1944 Beach II*"), No. SC21-1717, 2022 WL 3650803, at *1 (Fla. Aug. 25, 2022).

The Florida Supreme Court answered that question in the affirmative. And the court further determined that Florida does not employ a "standard search logic." *Id.* The Florida Supreme Court thus concluded that the statutory safe harbor for financing statements that fail to correctly name the debtor cannot apply, "which means that a financing statement that fails to correctly

name the debtor as required by Florida law is 'seriously misleading' under Florida Statute § 679.5061(2) and therefore ineffective." *Id.*

We therefore hold that Live Oak did not perfect its security interest in 1944 Beach Boulevard, LLC's, assets because the two UCC-1 Financing Statements filed with the Florida Secured Transaction Registry (the "Registry") were "seriously misleading" under Florida Statute § 679.5061(2), as the Registry does not implement a "standard search logic" necessary to trigger the safe harbor exception set forth in Florida Statute § 679.5061(3). Accordingly, we reverse the district court's order affirming the bankruptcy court's grant of Live Oak Banking Company's cross-motion for summary judgment and remand for further proceedings.

## I.    RELEVANT BACKGROUND[1]

Beach Boulevard, and its affiliated businesses, filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. *Id.* at 750. Beach Boulevard and its affiliates were jointly and severally liable to Live Oak on two loans guaranteed by the U.S. Small Business Administration; these loans purported to be secured by a blanket lien on all of Beach Boulevard's assets. *Id.* Live Oak, in an attempt to perfect its security interest in these assets, filed two UCC-1 Financing Statements with the Registry. *Id.* "These filing statements identify the debtor as '1944 Beach Blvd., LLC,' instead of its legal name, '1944 Beach Boulevard, LLC,' as

---

[1] The relevant facts of this appeal are set forth in our previous decision, *1944 Beach I*. *See* 20 F.4th at 750–52.

listed in the articles of organization filed with the Florida Secretary of State." *Id.*

Beach Boulevard filed a complaint asserting that Live Oak's UCC-1 financing statements were "seriously misleading" under Florida Statute § 679.5061(2) and therefore ineffective to perfect Live Oak's security interest. *Id.* at 750–51. The parties eventually cross-moved for summary judgment, and the bankruptcy judge granted summary judgment for Live Oak, concluding that Live Oak's financing statements fell under the "safe harbor" of Florida Statute § 679.5061(3) "because the Registry's standard search logic discloses the Financing Statements on the page immediately preceding the initial page on the Registry's website." *Id.* at 751. Thus, the bankruptcy court found the Live Oak's financing statements were "not seriously misleading and [were] effective to perfect [Live Oak's] security interest in all of [Beach Boulevard's] assets." *Id.* (some alterations in original). The district court, sitting in an appellate capacity, affirmed the bankruptcy court's order. *Id.* at 751–52. Beach Boulevard then appealed to this Court.

## II.    STANDARD OF REVIEW

District courts sit in an appellate capacity when reviewing bankruptcy court judgments; they accept the bankruptcy court's factual findings unless they are clearly erroneous and review legal conclusions *de novo. Rush v. JLJ Inc.* (*In re JLJ Inc.*), 988 F.2d 1112, 1116 (11th Cir. 1993). As the second court of review, this Court "independently examines the bankruptcy court's factual findings

21-11742                Opinion of the Court                    5

for clear error and reviews *de novo* the legal determinations of both the bankruptcy and district courts." *Id.*

The standard of review for a motion for summary judgment under Rule 7056 of the Federal Rules of Bankruptcy Procedure is the same as Rule 56 of the Federal Rules of Civil Procedure. *See Gray v. Manklow* (*In re Optical Techs., Inc.*), 246 F.3d 1332, 1334 (11th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord In re Optical Techs.*, 246 F.3d at 1334.

## III.    ANALYSIS

As we explained in *1944 Beach I*, 11 U.S.C. § 544(a) provides that "the trustee in a bankruptcy case is granted the status of a hypothetical lien creditor and may avoid any lien that is not properly perfected under state law as of the petition date." 20 F.4th at 752. Thus, we must look to Florida law to determine whether Live Oak perfected its security interest in Beach Boulevard's assets. To perfect a security interest under Florida law, "a creditor must file a 'financing statement' with the Registry," *id.* (quoting Fla. Stat. § 679.5011), and "[a] financing statement must provide three pieces of information to be considered sufficient for perfection: (1) the name of the debtor; (2) the name of the secured party; and (3) a description of the collateral covered by the financing statement," *id.* (quoting Fla. Stat. § 679.5021(1)).

Florida Statute § 679.5061 concerns the "[e]ffect of errors or omissions" in financing statements.  The statute provides, in relevant part:

> (1) A financing statement substantially complying with the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.
>
> (2) Except as otherwise provided in subsection (3), a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1) is seriously misleading.
>
> (3) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with s. 679.5031(1), the name provided does not make the financing statement seriously misleading.

As explained by the Florida Supreme Court, the "first subsection states that a financing statement may contain minor errors or omissions and remain effective to perfect a security interest, unless the error or omission renders the financing statement ˊseriously misleading.'" *1944 Beach II*, 2022 WL 3650803, at *3 (quoting § 679.5061(1)).  The second and third subsections of the statute, in turn, define "seriously misleading" as it relates to errors or admissions in naming the debtor.  *Id.*  Section 679.5061(2) "creates a zero-

tolerance rule, under which a financing statement that fails to name the debtor as directed in [Florida Statute § 679.5031(1)] is 'seriously misleading.'"[2]  *Id.*  And section 679.5061(3) creates a "safe harbor exception" to subsection (2)'s zero-tolerance rule providing that a financing statement with errors or omissions in naming a debtor "will still be effective to perfect a security interest so long as 'a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose' the financing statement."  *Id.* at *4 (quoting § 679.5061(3)).

Turning to this case, Beach Boulevard and Live Oak disagree as to whether Live Oak's financing statements fell under the safe harbor exception in section 679.5061(3).  As we explained before, "Live Oak's financing statements do not appear on the initial page of twenty names generated by a Registry search using Beach Boulevard's correct legal name," but "they do appear on an immediately preceding page."  *1944 Beach I*, 20 F.4th at 754.  Beach Boulevard

---

[2]  Section 679.5031(1) specifies how to correctly name a debtor that is a registered organization:

> [a] financing statement sufficiently provides the name of the debtor . . . only if the financing statement provides the name that is stated to be the registered organization's name on the public organic record most recently filed with or enacted by the registered organization's jurisdiction of organization that purports to state, amend, or restate the registered organization's name

*1944 Beach II*, 2022 WL 3650803, at *3 (quoting § 679.5031(1)(a)).

contends that "the initial page of twenty names is both the beginning and the end of the 'seriously misleading' inquiry," while Live Oak asserts that "it is just the beginning and that its financing statement appearing on the preceding page falls into the statutory safe harbor." *Id.*

Because this case presented a novel issue of Florida law that divided bankruptcy courts within our Circuit, and because we faced substantial doubt as to how the Florida Supreme Court would resolve the split, we certified these three questions to that court:

> (1) Is the "search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic," as provided for by Florida Statute § 679.5061(3), limited to or otherwise satisfied by the initial page of twenty names displayed to the user of the Registry's search function?
>
> (2) If not, does that search consist of all names in the filing office's database, which the user can browse to using the command tabs displayed on the initial page?
>
> (3) If the search consists of all names in the filing office's database, are there any limitations on a user's obligation to review the names and, if so, what factors should courts consider when determining whether a user has satisfied those obligations?

*1944 Beach I*, 20 F.4th at 758.

The Florida Supreme Court, however, found "dispositive a threshold question" that was not expressly certified by this Court:

"Is the filing office's use of a 'standard search logic' necessary to trigger the safe harbor protection of section 679.5061(3)?"[3] *1944 Beach II*, 2022 WL 3650803, at *1. And reading the language of section 679.5061(3), the court concluded "yes." *Id.*

After analyzing the relevant statutory text, the Florida Supreme Court also explained that section 679.5061(3) "does not define the scope of the search of the filing office's records that is necessary to determine whether the safe harbor applies," i.e., did not explain what "standard search logic" means in the context of the statute. *Id.* at * 4. But, the court noted, "the meaning of 'standard search logic' as used in Article 9 of the Uniform Commercial Code, which governs secured transactions and which Florida has adopted is well understood within the industry. . . . and  is reasonably accepted to mean a procedure that 'identif[ies] the set (which might be empty) of financing statements on file that constitute hits for the search,' or stated differently, that produces an '[u]nambiguous identification of hits.'" *Id.* (quoting Kenneth C. Kettering, *Standard Search Logic Under Article 9 and the Florida Debacle*, 66 U. Mia. L. Rev. 907, 913 (2012) (citations omitted)). The court then concluded that Florida's Registry, while offering an option for searching its records, did not have an option that was a "standard search logic." *Id.* Indeed, when conducting a search, "the Registry returns a list of twenty names starting with the name that most closely

---

[3] Because the Florida Supreme Court found this question dispositive, it found it unnecessary to reach the questions we certified to it. *1944 Beach II*, 2022 WL 3650803, at *5.

matches the name entered," which " is but a point from which the user can navigate forward and backward through all of the names indexed in the Registry." *Id.* And, as the Florida Supreme Court explained, a "'search procedure that returns as hits, for any search string, all financing statements in the filing office's database cannot rationally be treated as a 'standard search logic.'" *Id.* (quoting Kettering, *supra*, at 913).

The Florida Supreme Court therefore adopted "the definition of 'standard search logic' accepted in the secured transactions industry, which requires the search to identify specific hits, if any," and held that "the search option offered by the Registry, which returns the entire index, is not a 'standard search logic.'" *Id.* at *5. The court held that "section 679.5061(3) provides one way and one way only to search the filing office's records for purposes of determining whether the safe harbor applies to a financing statement that incorrectly names a debtor—i.e., 'using the filing office's standard search logic, if any.'" *Id.* As a result, the court explained that "[b]ecause the Registry lacks a 'standard search logic,' the search contemplated by section 679.5061(3) is impossible, which means that filers are left with the zero-tolerance rule of section 679.5061(2)." *Id.* Because the zero-tolerance rule applies "until the Registry employs a standard search logic, . . . any financing statement that fails to correctly name the debtor as required by section 679.5031(1) is 'seriously misleading' and therefore ineffective." *Id.*

The Florida Supreme Court's answer to the threshold question it identified resolves this appeal. As explained by the Florida

Supreme Court, since the Registry currently does not implement a "standard search logic," it is impossible to conduct a search necessary to qualify for the safe harbor exception contained in section 679.5061(3). *Id.* Thus, section 679.5061(2)'s zero-tolerance rule applies. As previously noted, Live Oak's filing statements identify Beach Boulevard as "1944 Beach Blvd., LLC," instead of its legal name, "1944 Beach Boulevard, LLC," listed in its articles of organization filed with the Florida Secretary of State. *1944 Beach I*, 20 F.4th at 750. Under section 679.5061(2), Live Oak's financing statements are "seriously misleading" because they "fail[] sufficiently to provide the name of the debtor in accordance with [section] 679.5031(1)," and are therefore ineffective to perfect a security interest in Beach Boulevard's assets under Florida law. *See 1944 Beach I*, 20 F.4th at 752; § 679.5011.

Because Live Oak did not properly perfect its security interest in all of Beach Boulevard's assets under Florida law, and because § 544(a) grants the bankruptcy trustee the status of a hypothetical lien creditor who may avoid any lien that is not properly perfected under state law as of the petition date, the bankruptcy court erred in concluding that Live Oak perfected its security interest. We therefore conclude that the district court erred in affirming the district court's grant of summary judgment for Live Oak.

## IV.    CONCLUSION

Because Live Oak's financing statements are seriously misleading under Florida law, they were not effective to perfect its security interest in all of Beach Boulevard's assets. The district court

therefore erred in affirming the bankruptcy court's order granting Live Oak's cross motion for summary judgment.  Accordingly, we reverse the district court's order affirming the bankruptcy court's grant of summary judgment for Live Oak, and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**